[No. H025443. Sixth Dist. Dec. 19, 2003.]

DEAN ALEXANDER, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE BRIX GROUP, INC., Real Party in Interest.

[No. H025471. Sixth Dist. Dec. 19, 2003.]

JEFF BELLAMY et al., Petitioners, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
THE BRIX GROUP, INC., Real Party in Interest.

**COUNSEL**

Kari L. Ley for Petitioners.

No appearance for Respondent.

James E. Toothman & Associates, James E. Toothman, Heather B. Hoesterey, and Joel F. Donahue for Real Party in Interest.

**OPINION**

**PREMO, Acting P. J.**—In this mandate action we are asked to decide whether a contractual venue selection clause is dispositive of the proper venue for an action on the contract. We conclude that to the extent the clause is inconsistent with the statutory venue scheme it is invalid.

## A. FACTUAL AND PROCEDURAL BACKGROUND

This matter involves two cases that raise the identical issue on similar facts. Plaintiff and real party in interest in both cases is the Brix Group, Inc., doing business as American Wireless (Brix). Defendants and petitioners are Dean Alexander, individually and doing business as Blah, Blah, Blah (Alexander)[1] and Jeff Bellamy and Lori Bellamy, individually and doing business as Execu-Tech Communications (Bellamy)[2] (collectively, defendants).

Brix is an agent for national cellular service providers like Nextel and Verizon. The Brix headquarters are in Santa Clara County and its branch offices are located throughout the United States. One branch office is in Fresno County.

Defendants are located in Fresno County and separately contracted with Brix to serve as sales agents for cellular service. Defendants both executed Brix's "Agency Agreement," which sets out the general terms of their

---

[1] Alexander is the defendant in case No. H025443.
[2] Bellamy is the defendant in case No. H025471.

relationship with Brix. These agreements are substantially identical and both contain the following provision:

"4.12 Choice of Law: The construction, interpretation, and performance of this Agreement shall be governed by the laws of the State of California and each party specifically stipulates to venue in Santa Clara County, California."

Brix sued defendants in separate lawsuits in Santa Clara County, alleging breach of contract. Both complaints alleged that venue was proper pursuant to the written agreement of the parties. Defendants filed motions to change venue to Fresno, arguing that Santa Clara was not a proper court under the pertinent venue statute. (Code Civ. Proc., § 395.)[3] Brix argued that venue was proper under section 395 because the contracts had been entered into, the obligations had been incurred, and the contracts designated the place of performance as Santa Clara County. In addition, Brix argued that the contracts contained a provision setting venue in Santa Clara County. As to its contention that the parties had contractually agreed upon venue, Brix acknowledged that *General Acceptance Corp. v. Robinson* (1929) 207 Cal. 285 [277 P. 1039] (*General Acceptance*) held that such agreements were void but Brix argued that *General Acceptance* had effectively been overruled by intervening case law.

In separate proceedings below the trial court denied defendants' motions to change venue, concluding in both cases that the venue selection clauses were "valid and binding." Defendants petitioned for writs of mandate. (§ 400.) We ordered the cases to be considered together for purposes of oral argument and decision, issued an order to show cause why peremptory writs should not issue, and stayed the proceedings below.

## B. DISCUSSION

■ The sole issue before us is whether the trial court erred in concluding that the venue selection clause was valid and binding and dispositive of the question of venue. Since the issue presents a pure question of law our review is de novo. (See *Kennedy/Jenks Consultants, Inc. v. Superior Court* (2000) 80 Cal.App.4th 948, 959–960 [95 Cal.Rptr.2d 817].)

■ We begin by observing that this case involves a venue selection clause, not a forum selection clause. The cases sometimes do not distinguish between the two types of clauses, perhaps because they both relate in some way to the geographical location in which trial will be held. But the terms have different meanings. Forum means "[a] court or other judicial body; a

---

[3] Further statutory references are to the Code of Civil Procedure.

place of jurisdiction." (Black's Law Dict. (7th ed. 1999) p. 664, col. 2.) Venue is "[t]he county or other territory" in which a case may be heard, i.e., the place from which the jury will be selected. (Black's Law Dict., *supra*, p. 1553, col. 2; and see *Milliken v. Gray* (1969) 276 Cal.App.2d 595, 600 [81 Cal.Rptr. 525].) Under state law, therefore, a venue selection clause is purely an intrastate issue involving the selection of a county in which to hold the trial.[4] By contrast, a forum selection clause usually chooses a court from among different states or nations. (See e.g., *The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1 [32 L.Ed.2d 513, 92 S.Ct. 1907] (*Bremen*).) The following discussion incorporates this distinction. Although Brix does not differentiate between the terms, as we shall explain, the difference is the crucial consideration.

The place for trial is fixed by statute. Section 395 provides that the place for trial is generally the place where the defendant resides at the time the action is commenced. (§ 395, subd. (a).) Section 395 identifies the proper court for trial of personal injury cases, dissolution of marriage, nullity of marriage and legal separation, family and child support proceedings, and contractual disputes. With respect to actions on contract the statute states: "Subject to subdivision (b) [specifying venue in action involving sales to consumers], if a defendant has contracted to perform an obligation in a particular county, the superior court in the county where the obligation is to be performed, where the contract in fact was entered into, or where the defendant or any defendant resides at the commencement of the action is a proper court for the trial of an action founded on that obligation, and the county where the obligation is incurred is the county where it is to be performed, unless there is a special contract in writing to the contrary." (*Ibid.*)

"What the legislature has in substance said is that all actions arising on contract shall be tried in the county in which the defendant resides, or in which the contract was made, unless the defendant has contracted specially and in writing as to the county in which his obligation is to be performed, in which event such county is also a proper county for the trial of the action." (*Armstrong v. Smith* (1942) 49 Cal.App.2d 528, 532 [122 P.2d 115].)

Defendants' objection to the venue clause rests exclusively upon *General Acceptance, supra*, 207 Cal. 285, a 1929 Supreme Court case that held such clauses to be invalid. Brix contends that *General Acceptance* is no longer good law and that the parties' advance selection of the venue for litigating disputes overrides the venue provisions of section 395. Brix argues that in the 74 years since *General Acceptance* was decided no case has relied upon it, it has been severely discredited, and it was expressly rejected by our Supreme

---

[4] In the federal system, venue refers to the federal district court in which the suit may be brought. (28 U.S.C. § 1391.)

Court in *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206] (*Smith*), which held that forum selection clauses are not per se invalid.

In *General Acceptance* the plaintiff filed a breach of contract suit in San Francisco County and the defendant moved to transfer venue to Alameda County, where he lived. (*General Acceptance, supra,* 207 Cal. at p. 286.) Defendant's residence would have been the only proper venue under the 1929 version of section 395. (See Code Commrs. note, Deering's Ann. Code Civ. Proc. (1991 ed.) foll. § 395, p. 359.) The trial court granted the defendant's motion and the plaintiff appealed, arguing that venue in San Francisco was proper because a clause in the contract provided for venue in San Francisco. (*General Acceptance, supra,* 207 Cal. at p. 286.) The Supreme Court affirmed the trial court's transfer, holding that the venue selection clause was void. (*Id.* at pp. 288–289.)

*General Acceptance* rested its holding on two considerations. First, the court relied upon concerns relating to jurisdiction. Historically, forum selection clauses had been viewed with disfavor due to the concern that they deprived the noncontractual forum of its jurisdiction. (See *Insurance Company v. Morse* (1874) 87 U.S. 445, 451 [22 L.Ed. 365, 49 How.Pr. 314] ["agreements in advance to oust the courts of the jurisdiction conferred by law are illegal and void"].) A corollary concern was that the litigants could not create jurisdiction by consent. *General Acceptance* found that several cases addressing these concerns supported the conclusion that the venue clause was likewise void. (*General Acceptance, supra,* 207 Cal. at pp. 288–289, citing *Nashua River Paper Co. v. Hammermill* (1916) 223 Mass. 8 [111 N.E. 678] [selection of Pennsylvania as forum for interstate dispute is void]; *Stoddard v. Stoddard* (1919) 187 App. Div. 258 [175 N.Y.S. 636, 175 N.Y.S. 650] [parties may not agree to have court rule upon dispute where no recognized cause of action is stated]; *Christensen v. Morse Dry Dock etc. Co.* (1926) 216 App.Div. 274 [214 N.Y.Supp. 732, 741] [agreement preferring workman's compensation forum over admiralty law is void].)

A second basis for the holding in *General Acceptance* is that venue selection clauses disrupt the Legislature's statutory venue scheme. In one of the cases upon which *General Acceptance* relied it was stated: "It is apparent that the venue of actions has been definitely fixed by statute, and that it is the policy of the law that actions shall be commenced and maintained as provided by law." (*McCarty v. Herrick* (1925) 41 Idaho 529 [240 P. 192, 193].) *General Acceptance* rejected the plaintiff's reliance upon a Washington case, noting that the Washington statutes permitted private agreements setting venue where the California statutes did not. (*General Acceptance, supra,* 207 Cal. at p. 288, distinguishing *State v. Superior Court of King County* (1911) 61 Wash. 681, 683 [112 P. 927].)

*General Acceptance* found *Nute v. Hamilton Ins. Co.* (1856) 72 Mass. 174, 6 Gray (Mass.) 174, which also concerned a venue selection provision, to be "quite in point." (*General Acceptance, supra,* 207 Cal. at p. 289.) The pertinent reasoning is this: "The rules to determine in what courts and counties actions may be brought are fixed, upon considerations of general convenience and expediency, by general law; to allow them to be changed by the agreement of parties would disturb the symmetry of the law, and interfere with such convenience. Such contracts might be induced by considerations tending to bring the administration of justice into disrepute; such as the greater or less intelligence and impartiality of judges, the greater or less integrity and capacity of juries, the influence, more or less, arising from the personal, social or political standing of parties in one or another county. . . . The greatest inconvenience would be in requiring courts and juries to apply different rules of law to different cases, in the conduct of suits, in matters relating merely to the remedy, according to the stipulations of parties in framing and diversifying their contracts in regard to remedies." (*Nute v. Hamilton Ins. Co., supra,* 72 Mass. at p. 184.)

*Smith,* upon which Brix relies, distinguished *General Acceptance,* but it did not affect its holding that venue selection clauses are invalid. *Smith* involved a forum selection agreement. The corporate plaintiff and defendant were domiciled in California and Pennsylvania, respectively. The parties had entered into a contract that contained a reciprocal forum selection clause under which they agreed that in the event of a suit the California corporation would sue in Pennsylvania and the Pennsylvania corporation would sue in California. Notwithstanding the agreement, the California corporation filed suit in California. The defendant moved to stay or dismiss the suit so that the matter could be filed in Pennsylvania as the parties had agreed. The trial court granted the motion and the plaintiff petitioned for a writ of mandate, arguing, among other things, that *General Acceptance* was controlling and the forum selection clause was void. The Supreme Court declined to issue the writ. (*Smith, supra,* 17 Cal.3d at p. 493.)

*Smith* adopted the modern view described by the United States Supreme Court in 1972: "The argument that [forum selection] clauses are improper because they tend to 'oust' a court of jurisdiction is hardly more than a vestigial legal fiction. It appears to rest at core on historical judicial resistance to any attempt to reduce the power and business of a particular court and has little place in an era when all courts are overloaded and when businesses once essentially local now operate in world markets. It reflects something of a provincial attitude regarding the fairness of other tribunals." (*Bremen, supra,* 407 U.S. at p. 12.)

*Smith* relied upon *Bremen* in concluding that forum selection clauses were permissible in California. *Smith* stated: "While it is true that the parties may

not *deprive* courts of their jurisdiction over causes by private agreement [citation], it is readily apparent that courts possess discretion to *decline* to exercise jurisdiction in recognition of the parties' free and voluntary choice of a different forum. Moreover, although we have acknowledged a policy favoring access to California courts by resident plaintiffs [citation], we likewise conclude that the policy is satisfied in those cases where, as here, a plaintiff has freely and voluntarily negotiated away his right to a California forum. In so holding we are in accord with the modern trend which favors enforceability of such forum selection clauses. [Citations.] [¶] No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length. For the foregoing reasons, we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, supra,* 17 Cal.3d at pp. 495–496.)

*Smith* acknowledged that *General Acceptance* recited the old rule that "the parties may not, by private agreement, 'oust' the jurisdiction of the courts." (*Smith, supra,* 17 Cal.3d at p. 495.) But *Smith* did not overrule *General Acceptance.* The court distinguished *General Acceptance* by noting that *General Acceptance* held that a venue selection clause was void because "it would contravene general statutory provisions which designate the proper counties in which actions may be tried." (*Ibid.*) In contrast, the court said, forum selection clauses "violate no such carefully conceived statutory patterns." (*Ibid.*) *Smith* also limited *General Acceptance* as follows: "While [*General Acceptance*] is factually distinguishable and, accordingly, may be said to rest upon policy considerations not involved in the present action, nevertheless to the extent that the rationale of *General Acceptance* is inconsistent with our opinion, we decline to follow it." (*Id.* at p. 496.)

We do not read *Smith* to have disapproved *General Acceptance. Smith* merely declined to use the concern about ousting a court of its jurisdiction as a basis for voiding a forum selection clause. We question whether that concern was ever applicable in a venue case, since venue is not generally an issue of jurisdiction, at least not in its fundamental sense. (See *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 121 [101 Cal.Rptr. 745].) But certainly by 1976, the jurisdictional concerns inhibiting forum selection clauses had lost their urgency and *Smith* made a point of adopting the modern view.

Regardless of the viability of the ouster doctrine, the alternate basis for the *General Acceptance* rule is unaffected by *Smith.* By distinguishing *General Acceptance, Smith* expressly acknowledged that the prohibition upon private

selection of intrastate venue rests upon considerations different from those that justify interstate and international forum selection agreements.

*Bremen* explained the reasons for the shift toward accepting forum selection clauses: "There are compelling reasons why a freely negotiated private international agreement, . . . should be given full effect. In this case, for example, we are concerned with a far from routine transaction between companies of two different nations contemplating the tow of an extremely costly piece of equipment from Louisiana across the Gulf of Mexico and the Atlantic Ocean, through the Mediterranean Sea to its final destination in the Adriatic Sea. In the course of its voyage, it was to traverse the waters of many jurisdictions. . . . It cannot be doubted for a moment that the parties sought to provide for a neutral forum for the resolution of any disputes arising during the tow. Manifestly much uncertainty and possibly great inconvenience to both parties could arise if a suit could be maintained in any jurisdiction in which an accident might occur . . . . The elimination of all such uncertainties by agreeing in advance on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." (*Bremen, supra,* 407 U.S. at pp. 12–14, fns. omitted.) Thus, forum selection clauses are now treated favorably because of the role they play in *national* and *international* commerce. (*America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11–12 [108 Cal.Rptr.2d 699].)

The commercial considerations supporting national and international forum selection clauses do not apply with equal force to an intrastate venue selection clause. The statutory scheme makes venue a certainty. And although convenience may be an issue when selecting a venue, it is much less of a concern than it is in interstate and international disputes.

More importantly, the second basis for the *General Acceptance* rule is derived from a separate public policy concern. The concern with selecting venue is that parties will disrupt the statutory scheme and bring the administration of justice into disrepute in order to have their cause heard where they believe it will be received most sympathetically. But it is not for the parties or the courts to set venue. That is the role of the Legislature. (See *Caminetti v. Superior Court* (1941) 16 Cal.2d 838, 843 [108 P.2d 911].) Since the venue statutes themselves declare the public policy of this state with respect the proper court for an action, agreements fixing venue in some location other than that allowed by statute are a violation of that policy. As *Smith* succinctly noted, forum selection agreements "violate no such carefully conceived statutory patterns." (*Smith, supra,* 17 Cal.3d at p. 495.)

To summarize, *General Acceptance* held that to the extent a venue selection clause disrupts statutory venue provisions it is void as against the

legislatively declared public policy fixing the place for trial. Nothing in *Smith* affects that holding. We recognize that no case before or after *Smith*, has relied upon *General Acceptance* to strike down a venue selection clause. By the same token, we are not aware of any case in this state that has held such a clause to be enforceable. *General Acceptance* has survived this 74-year gap in the law and we are bound to follow it. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)

Accordingly, the trial court erred in determining that the contractual venue selection provision was dispositive of the question of venue. We shall issue the writs and instruct the court to vacate its orders denying defendants' motions to change venue. Because Brix based its opposition to the motions on statutory as well as contractual grounds, the trial court must now reconsider the motions to determine in each case whether under section 395 venue is proper in Santa Clara County.

## C. DISPOSITION

In *Alexander v. Superior Court*, H025443: Let a peremptory writ of mandate issue commanding the respondent court to vacate its order denying petitioner's motion for change of venue and to reconsider its ruling to determine whether, consistent with the requirements of Code of Civil Procedure section 395, venue is otherwise proper in Santa Clara County. The temporary stay order is vacated upon the finality of this opinion.

The parties shall bear their own costs on appeal.

In *Bellamy v. Superior Court*, H025471: Let a peremptory writ of mandate issue commanding the respondent court to vacate its order denying petitioners' motion for change of venue and to reconsider its ruling to determine whether, consistent with the requirements of Code of Civil Procedure section 395, venue is otherwise proper in Santa Clara County. The temporary stay order is vacated upon the finality of this opinion.

The parties shall bear their own costs on appeal.

Bamattre-Manoukian, J., and Wunderlich, J., concurred.