[No. B179478. Second Dist., Div. Three. Apr. 27, 2006.]

MARTIN OLINICK, Plaintiff and Appellant, v.
BMG ENTERTAINMENT et al., Defendants and Respondents.

**COUNSEL**

Marcin Barrera & O'Connor, Patricio T. D. Barrera; Esner & Chang and Stuart Esner for Plaintiff and Appellant.

Proskauer Rose, Harold M. Brody and Christine De Bretteville for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Martin Olinick (Olinick) appeals an order granting a motion by defendants and respondents BMG Music (BMG) et al. to stay the action on the ground of inconvenient forum. (Code Civ. Proc., § 418.10.)[1] The trial court stayed the action for six months, pending Olinick's filing suit in New York.

---

[1] Code of Civil Procedure section 418.10 provides in relevant part: "(a) A defendant, on or before the last day of his or her time to plead or within any further time that the court may for good cause allow, may serve and file a notice of motion for one or more of the following

The essential issues presented are whether the instant action is within the ambit of the employment agreement's forum selection and choice of law provisions, which require this dispute to be tried in New York pursuant to New York law, and if so, whether those contractual provisions are unenforceable as against public policy.

We conclude Olinick's statutory cause of action for age discrimination under the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940) as well as his common law cause of action for wrongful discharge in violation of the public policy against age discrimination are subject to the agreement's forum selection and choice of law provisions, and that those provisions do not violate California public policy. Accordingly, the order enforcing the forum selection and choice of law provisions is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Facts.*

Olinick, a lawyer who is admitted to both the New York and California bars, began working for BMG's predecessor, RCA Records, in New York in 1971. In 1977, Olinick and his family relocated to the West Coast. In 1986, BMG acquired RCA. BMG is a New York general partnership whose worldwide headquarters and principal place of business is located in New York City. Olinick ultimately attained the level of senior vice-president at BMG, with a salary of over $300,000 per year.

In 1991, 1994 and 1997, Olinick and BMG entered into written three-year employment agreements.

#### a. *The instant employment agreement.*

On November 10, 2000, Olinick and BMG executed the subject eight-page employment agreement covering the period between July 1, 2000, and October 31, 2004 (the Agreement). The Agreement was the product of nine months of contract negotiations, conducted almost entirely in New York. In the negotiations, Olinick was represented by a New York-based music industry law firm and BMG was represented by its New York-based in-house counsel and executives. The parties exchanged more than 10 drafts before coming to an agreement.

---

purposes: [¶] (1) To quash service of summons on the ground of lack of jurisdiction of the court over him or her. [¶] (2) *To stay or dismiss the action on the ground of inconvenient forum.*" (Italics added.)

All further statutory references are to the Code of Civil Procedure, unless otherwise indicated.

The Agreement contains many of the usual provisions, including duties, the term of employment, compensation, and benefits.

The Agreement provided Olinick could be terminated *without cause,* provided that certain compensation was paid to him.[2] The Agreement also gave BMG the right to terminate Olinick for cause, and specified the compensation in that situation as well.[3]

The provision which is the focus of this controversy is paragraph G (Paragraph G), which is both a choice of law provision and a forum selection provision. Paragraph G states: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of laws. The parties agree to the exclusive jurisdiction and venue of the Supreme Court of the State of New York for New York County and/or the United States District Court for the Southern District of New York for the resolution of all disputes arising under this Agreement." Thus, the first sentence of Paragraph G provides for the application of New York law. The second sentence of Paragraph G selects New York as the forum.[4]

  b.  *Olinick's termination.*

On March 26, 2003, after 32 years of employment with RCA/BMG, Olinick was terminated. At the time, he was 59 years of age.

---

[2] In this regard, the Agreement states: "Termination Without Cause. [¶] (i) If BMG terminates this Agreement other than for cause, you shall have the right to receive, *for the remainder of the Term,* your salary, automobile allowance, a lump sum payment equal to twenty-five percent (25%) of the average of your bonus for the proceeding [*sic*] two (2) fiscal years, medical and dental benefits as though you were an active employee for the remainder of the Term, plus a pro rata bonus . . . ." (Italics added.)

[3] In this regard, the Agreement states: "Termination for Cause. BMG shall have the right at any time, upon written notice, to terminate your employment for cause. If BMG terminates this Agreement for cause, you shall have no right to receive any further compensation other than Accrued Compensation, except for the limited benefits payable in the event of death . . . and disability . . . ."

[4] Technically speaking, the provision setting New York as the forum is a forum selection clause, not a venue selection clause. Venue is merely an intrastate issue, involving the selection of a county in which to hold the trial. By contrast, a forum selection clause chooses a court from among different states. (*Alexander v. Superior Court* (2003) 114 Cal.App.4th 723, 726–727 [8 Cal.Rptr.3d 111].)

BMG asserts it terminated Olinick as part of a wide-ranging reorganization following an acquisition, and that it was entitled to do so pursuant to its right under the Agreement to terminate Olinick's employment without cause.

Olinick, in turn, contends his age was a motivating factor in BMG's decision to terminate him, and that he was replaced by a substantially younger, less qualified attorney.

### 2. *Proceedings.*

Olinick filed a charge with the California Department of Fair Employment and Housing, alleging age discrimination in violation of FEHA.[5] He received a right-to-sue letter.

On March 15, 2004, Olinick filed a complaint in the Los Angeles Superior Court alleging two causes of action predicated on the FEHA: (1) a statutory claim under FEHA for age discrimination; and (2) a common law tort claim for wrongful termination in violation of California public policy, namely, the public policy against age discrimination as embodied in the FEHA.

On May 4, 2004, BMG filed a motion to stay or dismiss the action on the ground of inconvenient forum. BMG asserted California was an inconvenient forum because the dispute between Olinick and BMG was governed by a written employment contract that contains a forum selection clause requiring that any action between Olinick and BMG be brought in New York. BMG asserted a reasonable basis exists for enforcing the forum selection clause because New York is: BMG's principal place of business; where the agreement was negotiated and entered into and where the attorneys who represented Olinick in connection with the Agreement are located; where Olinick regularly traveled in order to perform his duties; and where BMG made the decision to exercise its rights under the Agreement, and where all its witnesses and documents are located.

BMG further argued the New York forum is available and can accomplish substantial justice in that under the New York City Human Rights Law, which bans age discrimination, a prevailing plaintiff is entitled to economic, compensatory and punitive damages as well as attorney fees, and there is no reason to believe New York courts are less likely than California counts to enforce antidiscrimination laws.

---

[5] BMG acknowledges: "Nothing in the Agreement does (or could) restrict Olinick's 'resort to the Department of Fair Employment and Housing, the administrative agency charged with prosecuting complaints made under the FEHA . . .' . . . And nothing in the Agreement does (or could) prevent 'the Department . . . from carrying out its statutory functions . . . .' . . . These include investigating the complaint, and, where warranted, implementing an administrative proceeding before the Fair Employment and Housing Commission . . . ."

In opposing the motion, Olinick argued BMG failed to meet its burden to show California is a seriously inconvenient forum; he lived and worked in California; one of the BMG defendants is a California citizen; many of the percipient witnesses are in California; and he presented age discrimination claims based purely on violations of California law. Further, dismissal would be improper because California has an interest in protecting the rights of its citizens, and a stay is only proper if his rights would be protected under New York law, which is not the case here because his age discrimination claims are time-barred under New York law.

After extensive briefing by the parties, the matter was initially heard on July 21, 2004, and thereafter on August 30, 2004, and October 1, 2004. At the final hearing, the trial court denied BMG's motion to dismiss and instead, issued a six-month stay to enable Olinick to file suit in New York.

In enforcing Paragraph G, the trial court essentially concluded "a deal is a deal." The trial court found did not find "anything unreasonable about the New York forum selection clause." Further, "[e]quitable balancing analysis certain [*sic*] underscore[s] the reasonableness of the forum selection clause. The deal was made in New York. Defendant's principal place of business is New York. It was a deal point in the negotiations, and for this court not to enforce it, would fly in the face of logic and in the face of the [principle] of orderly conduct of commerce."

Olinick appealed the order.[6]

## CONTENTIONS

Olinick contends the order should be reversed because: BMG's motion was not filed timely and was not heard timely; under the narrow language of the contract's forum selection clause, this action, alleging a cause of action under the FEHA and a cause of action for wrongful discharge in violation of public policy, is not an "action on the contract"; the trial court erred in overruling his evidentiary objections; California's public policy underlying the FEHA's prohibition against age discrimination in employment overrides the forum selection/choice-of-law clause in the employment agreement; and California has a materially greater interest than New York, the state designated by the parties as the location to resolve contract disputes, in the subject of this litigation.[7]

---

[6] An order granting a motion to stay or dismiss an action on the ground of inconvenient forum is appealable. (§ 904.1, subd. (a)(3).)

[7] Olinick also contends, for the first time on appeal, that Paragraph G, requiring him to litigate in New York, is unconscionable. A determination of unconscionability requires the development of a factual record to inform such analysis. (*Armendariz v. Foundation Health*

## DISCUSSION

### 1. *General principles.*

■ The procedure for enforcing a forum selection clause is a motion to stay or dismiss for forum non conveniens. (*Berg v. MTC Electronics Technologies Co.* (1998) 61 Cal.App.4th 349, 358 [71 Cal.Rptr.2d 523] (*Berg*).)

With respect to forum selection, the Agreement provides: "The parties agree to the exclusive jurisdiction and venue of the Supreme Court of the State of New York for New York County and/or the United States District Court for the Southern District of New York for the resolution of all disputes arising under this Agreement." The clause in question contains express language of exclusivity of jurisdiction, specifying a mandatory location for litigation. This constitutes a mandatory forum selection clause. (*Berg, supra,* 61 Cal.App.4th at pp. 357–358.)

■ "Although not even a 'mandatory' forum selection clause can completely eliminate a court's discretion to make appropriate rulings regarding choice of forum, the modern trend is to enforce mandatory forum selection clauses unless they are unfair or unreasonable. [Citations.] . . . [¶] If there is no mandatory forum selection clause, a forum non conveniens motion 'requires the weighing of a gamut of factors of public and private convenience . . . .' [Citation.] *However if there is a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable,* and the clause is usually given effect. Claims that the previously chosen forum is unfair or inconvenient are generally rejected. [Citation.] A court will usually honor a mandatory forum selection clause without extensive analysis of factors relating to convenience. [Citation.] ' "Mere inconvenience or additional expense is not the test of unreasonableness . . ." ' of a mandatory forum selection clause. [Citation.]" (*Berg, supra,* 61 Cal.App.4th at pp. 358–359, italics added.)[8]

---

*Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113–114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*); *Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 508 [30 Cal.Rptr.3d 787, 115 P.3d 68].) Therefore, we do not need the issue.

[8] Olinick contends the trial court erred in overruling his objections to BMG's evidence. Olinick argues his objections to the declaration of Clemon Williams, BMG's in-house counsel, should have been sustained because: Williams lacked personal knowledge of the termination decision; Williams attached drafts of the Agreement that he did not himself prepare; Williams did not state where he works; Williams does not identify the decision makers; and Williams does not identify specific witnesses or their locations. However, none of these facts is necessary to demonstrate that the selected New York forum was "reasonable." As stated, "if there *is* a mandatory forum selection clause, the test is simply whether application of the clause is unfair or unreasonable." (*Berg, supra,* 61 Cal.App.4th at p. 358.)

2. *Timeliness.*

Olinick contends the motion was not timely filed by BMG and was not timely heard by the trial court. The arguments are unavailing.

    a. *The motion was filed timely; Olinick gave BMG a 15-day extension of time to respond to the complaint and the motion was filed within that time.*

A motion to stay or dismiss on the ground of inconvenient forum must be made within the time permitted to plead, i.e., 30 days after service of the complaint, unless extended by stipulation or court order. (§ 418.10, subd. (a).) On March 19, 2004, BMG was served with the summons and complaint. Therefore, its responsive pleading was due on or before Monday, April 19, 2004. On April 15, 2004, BMG's counsel wrote a letter to Olinick's counsel confirming that Olinick had granted a 15-day extension of time "to answer or otherwise respond to the Complaint." This 15-day extension gave BMG until May 4, 2004, to respond to the complaint. On that day, BMG filed its motion to dismiss or stay the action under section 418.10.

Olinick contends the 15-day extension was granted solely to extend BMG's time to file either an answer or a demurrer, and the extension was not intended to serve as "a blanket extension of time to file any type of motion." The argument is without merit. Olinick's counsel never requested that the extension be limited specifically to a demurrer or an answer, either before or after he received the confirming correspondence from BMG's counsel. Clearly, BMG's motion to dismiss or stay the action under section 418.10 falls within the scope of the 15-day extension of time granted by Olinick "to answer *or otherwise respond to the complaint.*" (Italics added.) We conclude BMG's motion under section 418.10, filed May 4, 2004, was filed timely.

    b. *Olinick stipulated to delay the hearing; the time for hearing the matter is not jurisdictional.*

Section 418.10 provides at subdivision (b): "The notice shall designate, as the time for making the motion, a date not more than 30 days after filing of the notice."

Here, the notice of motion, filed May 4, 2004, designated a hearing date of July 1, 2004, nearly two months later. Thereafter, the parties formally stipulated to change the hearing date from July 1 to July 21 and the stipulation was approved by the trial court.

Notwithstanding these circumstances, Olinick contends "a mandatory, 30-day strict timeline governs the motion" and by failing to designate a hearing within the 30-day period, BMG waived its right to bring the motion under section 418.10. The argument fails.

Section 418.10 states at subdivision (a): "A defendant, on or before the last day of his or her time to plead *or within any further time that the court may for good cause allow,* may serve and file a notice of motion . . . [¶] . . . [¶] (2) To stay or dismiss the action on the ground of inconvenient forum." Thus, the statute reflects the trial court is authorized to extend the time for filing such a motion. Further, as Weil and Brown observes: "[S]cheduling a hearing date *beyond* 30 days should not invalidate a motion to quash. Nothing in [section] 418.10 suggests the court must overlook the lack of personal jurisdiction or proper service because of a defendant's failure to schedule a hearing date within 30 days." (Weil & Brown, Cal. Practice Guide: Civ. Proc. Before Trial (The Rutter Group 2005) ¶ 3:381, p. 3-86.) Accordingly, we reject Olinick's theory that a tardy hearing date on a motion to stay or dismiss under section 418.10 deprives the trial court of jurisdiction to consider the merits of the motion.

We now turn to the substantive issues on appeal.

3. *Paragraph G, the Agreement's forum selection/choice of law provision, applies to the causes of action pled by Olinick in his complaint.*

The threshold issue is whether the causes of action pled in the complaint are encompassed by Paragraph G.

a. *Olinick's theory.*

As indicated, Paragraph G provides: "*This Agreement* shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of laws. The parties agree to the exclusive jurisdiction and venue of the Supreme Court of the State of New York for New York County and/or the United States District Court for the Southern District of New York for the resolution of all disputes arising under this Agreement."

Olinick contends Paragraph G limits only *contractual* disputes to New York jurisdiction and that this lawsuit is not a dispute arising under the Agreement. Rather, the complaint asserts a statutory cause of action under the FEHA for age discrimination, and a common law tort claim for wrongful

discharge in violation of public policy. In essence, Olinick argues that because the complaint does not raise a contractual dispute, Paragraph G, by its terms, is inapplicable.

### b. *Case law addressing the scope of a choice-of-law clause.*

In *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 [11 Cal.Rptr.2d 330, 834 P.2d 1148] (*Nedlloyd Lines B.V.*), the Supreme Court considered the effect of a choice-of-law clause in a contract between commercial entities to finance and operate an international shipping business. The choice-of-law clause required the contract to be " 'governed by' " the law of Hong Kong. (*Id.* at p. 462.) An issue presented was whether the choice-of-law clause applied to the plaintiff's claim for breach of fiduciary duty. The plaintiff contended its fiduciary duty claim was independent of the contract and therefore outside the intended scope of the choice-of-law provision, entitling plaintiff to the application of California law on the fiduciary duty claim. (*Id.* at p. 468.) The Supreme Court rejected the contention, explaining:

"When two sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract. Initially, such an interpretation is supported by the plain meaning of the language used by the parties. The choice-of-law clause in the shareholders' agreement provides: 'This agreement shall be *governed by* and construed in accordance with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts.' (Italics added.) [Fn. omitted.]

"The phrase 'governed by' is a broad one signifying a relationship of absolute direction, control, and restraint. Thus, the clause reflects the parties' clear contemplation that 'the agreement' is to be completely and absolutely controlled by Hong Kong law. No exceptions are provided. In the context of this case, the agreement to be controlled by Hong Kong law is a shareholders' agreement that expressly provides for the purchase of shares in Seawinds by Nedlloyd and creates the relationship between shareholder and corporation that gives rise to Seawinds's cause of action. *Nedlloyd's fiduciary duties, if any, arise from—and can exist only because of—the shareholders' agreement* pursuant to which Seawinds's stock was purchased by Nedlloyd.

"In order to control completely the agreement of the parties, Hong Kong law must also govern the stock purchase portion of that agreement and the legal duties created by or emanating from the stock purchase, including any fiduciary duties. If Hong Kong law were not applied to these duties, it would effectively control only part of the agreement, not all of it. Such an interpretation would be inconsistent with the unrestricted character of the choice-of-law clause.

■ "Our conclusion in this regard comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, *the logical conclusion is that he or she intended that law to apply to all disputes arising out of the transaction or relationship.* We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

"Seawinds's view of the problem—which would require extensive litigation of the parties' supposed intentions regarding the choice-of-law clause to the end that the laws of multiple states might be applied to their dispute—is more likely the product of postdispute litigation strategy, not predispute contractual intent. If commercially sophisticated parties (such as those now before us) truly intend the result advocated by Seawinds, they should, in fairness to one another and in the interest of economy in dispute resolution, negotiate and obtain the assent of their fellow parties to explicit contract language specifying what jurisdiction's law applies to what issues.

"Justice Mosk long ago cogently observed that, 'Given two experienced businessmen dealing at arm's length, both represented by competent counsel, it has become virtually impossible under recently evolving rules of evidence to draft a written contract that will produce predictable results in court. The written word, heretofore deemed immutable, is now at all times subject to alteration by self-serving recitals based upon fading memories of antecedent events. This, I submit, is a serious impediment to the certainty required in commercial transactions.' (*Delta Dynamics, Inc. v. Arioto* (1968) 69 Cal.2d 525, 532 [72 Cal.Rptr. 785, 446 P.2d 785] (dis. opn. of Mosk, J.).)

"With due acknowledgment of Justice Mosk's prescience, other courts have more recently reiterated that, 'While [the] rule [of easily pleaded ambiguity] creates much business for lawyers and an occasional windfall to some clients, it leads only to frustration and delay for most litigants and clogs already overburdened courts.' (*Trident Center v. Connecticut General Life Ins.* (9th Cir. 1988) 847 F.2d 564, 569; *Wilson Arlington Co. v. Prudential Ins. Co.* (9th Cir. 1990) 912 F.2d 366, 370.) We need not envelop choice-of-law clauses in this fog of uncertainty and ambiguity.

"For the reasons stated above, we hold a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, *encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.*" (*Nedlloyd Lines B.V.,* supra, 3 Cal.4th at pp. 468–470, some italics added.)[9]

### c. The instant choice-of-law provision is applicable to Olinick's age discrimination claims.

Paragraph G provides: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of laws." In the absence of any limiting or qualifying language in Paragraph G, we conclude the choice-of-law clause "*encompasses all causes of action arising from or related to [the] [A]greement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates.*" (*Nedlloyd Lines B.V.,* supra, 3 Cal.4th at p. 470, italics added.) If sophisticated parties, such as those now before us, truly intended the result being advocated by Olinick, they should have specified what jurisdiction's law applies to what issues. (*Ibid.*)

We recognize the FEHA claim and the tortious wrongful discharge claim are not predicated on the existence of the Agreement, and that such discrimination claims may be asserted by any employee, even one whose employment

---

[9] As indicated, Paragraph G provides: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of laws." The Agreement, obviously, includes the choice-of-law provision itself. Thus, in the normal course, the interpretation of Paragraph G should be determined pursuant to New York law. However, the parties did not request judicial notice of New York law on this question of interpretation or supply us with evidence of the relevant aspects of that law. Therefore, our contract interpretation is pursuant to California law. (*Nedlloyd Lines B.V.,* supra, 3 Cal.4th at p. 469, fn. 7.)

is at will.[10] Nonetheless, the legal relationship between these parties emanates from this Agreement and the interpretation of the Agreement will be a central issue in the discrimination case. In defending against Olinick's claim he was discriminated against and terminated on account of his age, BMG inevitably will assert its right under the Agreement to terminate Olinick without cause, provided that certain compensation was paid to him. Thus, Olinick's age discrimination claims are inextricably intertwined with the construction and enforcement of the Agreement, and BMG plainly is entitled under the choice-of-law clause to have the Agreement "governed by and *construed and enforced* in accordance with the laws of the State of New York, without regard to conflicts of laws." (Italics added.)

To reiterate *Nedlloyd,* we seriously doubt the parties would intend "that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." (*Nedlloyd Lines B.V., supra,* 3 Cal.4th at p. 469.) We conclude the choice-of-law provision, calling for the application of New York law, encompasses Olinick's age discrimination claims.

> d. *By a parity of reasoning, the forum selection provision of Paragraph G also applies to Olinick's age discrimination claims.*

■ *Nedlloyd*'s rationale with respect to the scope of the choice-of-law provision is equally applicable to the scope of the forum selection clause.

As indicated, with respect to forum selection, the Agreement provides: "The parties agree to the exclusive jurisdiction and venue of the Supreme Court of the State of New York for New York County and/or the United States District Court for the Southern District of New York *for the resolution of all disputes arising under this Agreement.*" (Italics added.)

In the absence of any limiting or qualifying language in Paragraph G, we conclude the forum selection clause *"encompasses all causes of action*

---

[10] The tort cause of action for wrongful termination in violation of public policy provides a vehicle for recourse that otherwise would be unavailable under general rules of the at-will employment doctrine. First recognized by the California Supreme Court in *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330], this public policy exception allows an employee to bring a tort cause of action against an employer who terminates an at-will employment on a ground that violates fundamental public policy. The exception is based on the principle that, although an employer may terminate an at-will employee for no reason, or any arbitrary or irrational reason, the employer has no power to terminate the employee for a reason contrary to the law or fundamental public policy. (*Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 225–226 [116 Cal.Rptr.2d 770].)

*arising from or related to [the] [A]greement, regardless of how they are characterized."* (*Nedlloyd Lines B.V., supra,* 3 Cal.4th at p. 470, italics added.) If the parties truly intended to limit the forum selection clause in the manner now being urged by Olinick, they should have so specified. (*Id.* at p. 470.)

In sum, we conclude Olinick's age discrimination claims are subject to Paragraph G's choice-of-law and forum selection provisions. We now turn to Olinick's contention that California's public policy underlying the FEHA overrides Paragraph G.

4. *No merit to Olinick's contention that Paragraph G is unenforceable on public policy grounds.*

    a. *Employment discrimination claims have been held subject to forum selection clauses, provided the selected forum affords an adequate remedy.*

Employment discrimination claims were specifically considered in the following three federal decisions and in all three were held subject to the parties' forum selection clause. (*Spradlin v. Lear Siegler Management Services* (9th Cir. 1991) 926 F.2d 865, 868–869 (*Spradlin*); *Flake v. Medline Industries, Inc.* (E.D.Cal. 1995) 882 F.Supp. 947, 950 (*Flake*); *Hopkinson v. Lotus Development Corp.* (N.D.Cal. June 20, 1995, No. C 95-1389 FMS) 1995 WL 381888 (*Hopkinson*).)[11]

In *Spradlin,* the Ninth Circuit upheld the district court's order enforcing a forum selection clause in an employment agreement, thereby requiring a California resident to litigate his age discrimination claim in Saudi Arabia. In examining the enforceability of the forum selection clause, *Spradlin* found "nothing in the case law . . . to suggest that a different analysis applies to forum selection clauses in employment contracts than generally applies to commercial contracts." (*Spradlin, supra,* 926 F.2d at p. 867.)

*Spradlin* took into account the factual circumstances of the initial employment agreement and the underlying dispute which brought the parties to court, including any power differentials which existed between the two parties to the contract. (*Spradlin, supra,* 926 F.2d at p. 868.) Based on the plaintiff's job title and salary, *Spradlin* surmised he "was not entirely

---

[11] Although *Hopkinson,* a United States District Court decision, is not published in the Federal Supplement, it is citable notwithstanding California Rules of Court, rule 977, which only bars citation of unpublished California opinions. Therefore, *Hopkinson* is citable as persuasive, although not precedential, authority. (*City of Hawthorne ex rel. Wohlner v. H&C Disposal Co.* (2003) 109 Cal.App.4th 1668, 1678, fn. 5 [1 Cal.Rptr.3d 312].)

unsophisticated." (*Id.* at p. 869, fn. 4.) Further, the plaintiff "offered no evidence of particular lack of sophistication in the court below." (*Ibid.*)

*Spradlin* indicated it was "troubled by Lear Siegler's standard inclusion of a Saudi Arabian forum selection clause in employment contracts when it is highly foreseeable that terminated American employees will be required to return to the United States [fn. omitted] and will thus face considerable obstacles in bringing wrongful termination actions." (*Spradlin, supra,* 926 F.2d at p. 869.) However, the plaintiff failed to establish an abuse of discretion by the trial court—"he has not only failed to produce evidence of inconvenience he would suffer by being forced to litigate in Saudi Arabia, he has failed even to offer any specific allegations as to travel costs, availability of counsel in Saudi Arabia, location of witnesses, or his financial ability to bear such costs and inconvenience." (*Ibid.*)

Leaving aside the specific facts and circumstances shown in *Spradlin,* that decision reflects that employment discrimination claims, like other claims, may be held subject to forum selection clauses pursuant to the usual standards.

In *Flake,* the district court required litigation of a FEHA age discrimination claim in Illinois, stating: "Given the strong presumption in favor of forum selection clauses, Flake has not made the necessary showing to avoid enforcement of the clause in this case. At oral argument, plaintiff argued that enforcement of the forum selection clause would be 'unreasonable.' However, the clause will allow Medline to conserve its resources, and defendant otherwise might be subject to litigation from sales representatives in numerous different places." (*Flake, supra,* 882 F.Supp. at p. 950.)

Olinick contends *Flake* is distinguishable because there, the plaintiff filed age discrimination claims in both forums under consideration and his rights in the forum selected by the parties already were protected in that state; he, in contrast, is not litigating in New York. However, *Flake* does not turn on that point.

In arguing against enforcement of the forum selection clause, the plaintiff in *Flake* "principally relie[d] on California's strong public policy interest in preventing age discrimination against employees in this state." (*Flake, supra,* 882 F.Supp. at p. 950.) The argument was unavailing. *Flake* held "[w]hile California does have a strong public policy interest in protecting its residents

from discrimination, *this interest will not be contravened as long as Flake has some legitimate remedy for his age discrimination claim.*" (*Ibid.*, italics added.)[12]

In *Hopkinson*, the district court required California plaintiffs to litigate sex and age discrimination claims in Massachusetts under their employment agreements' forum selection clauses. *Hopkinson* rejected the plaintiffs' argument the clauses were unenforceable on public policy grounds. *Hopkinson* explained: "Plaintiffs . . . contend that enforcing the clause would contravene California's interest in protecting its residents from discrimination. This argument is likewise without merit. Massachusetts statutory law prohibits discrimination on the basis of sex and age as California laws do, and the Massachusetts Commission against Discrimination is the administrative equivalent of the California Department of Fair Employment and Housing. See Mass. Gen. Laws Ann. ch. 151B (West 1995); ch. 149 (West 1995). Plaintiffs have asserted no grounds for believing that Massachusetts courts are less likely than California courts to enforce anti-discrimination laws." (*Hopkinson, supra,* 1995 WL 381888, at p. *4.)

Guided by these decisions, we hold that *provided* Olinick has an adequate remedy for his age discrimination claim in the selected forum, the forum selection clause does not violate California's public policy against age discrimination.

> b. *The New York City Human Rights Law provides an adequate remedy.*

Like the FEHA (Gov. Code, § 12940), the New York City Human Rights Law (NYCHRL) (NYC Admin. Code, § 8-101 et seq.) prohibits age discrimination. (*Id.*, § 8-107(1)(a).)

The NYCHRL permits the recovery of compensatory and punitive damages (*Bracker v. Cohen* (1994) 204 A.D.2d 115 [612 N.Y.S.2d 113]), emotional distress damages (*McIntyre v. Manhattan Ford, Lincoln-Mercury, Inc.* (1998) 256 A.D.2d 269 [682 N.Y.S.2d 167, 169]), and an award of attorney fees to the prevailing party (*McGrath v. Toys "R" Us, Inc.*

---

[12] In opposing BMG's inconvenient forum motion below, Olinick asserted his rights would not be protected because his age discrimination claims are time-barred under New York law. The same argument was made in *Flake*, where the plaintiff contended that if the forum selection clause were given effect, his claim would be barred by Illinois's requirement a six-month notice of intended suit be filed for actions of this nature. (*Flake, supra,* 882 F.Supp. at p. 950.) *Flake* found, "It is unclear whether this filing requirement would block Flake's state claim. Even if it did, however, plaintiff cannot avoid the forum he had contracted to accept simply by failing to adhere to its procedural requirements." (*Ibid.*)

(2004) 3 N.Y.3d 421, 428 [788 N.Y.S.2d 281, 821 N.E.2d 519]), with the right to trial by jury (*McGrath, supra*, 821 N.E.2d 519; *McIntyre, supra*, 682 N.Y.S.2d 167).

Further, there is no reason to believe the New York courts "are less likely than California courts to enforce anti-discrimination laws." (*Hopkinson, supra*, 1995 WL 381888 at p. *4.)[13]

### c. *FEHA does not contain a specific antiwaiver provision.*

■ Another factor favoring enforcement of the instant forum selection and choice of law provisions is that the FEHA, unlike other statutory schemes, does not contain an antiwaiver provision.

For example, Civil Code section 1751, within the Consumers Legal Remedies Act, provides: "Any waiver by a consumer of the provisions of this title is contrary to public policy and shall be unenforceable and void."

Similarly, Corporations Code section 25701, within the Corporate Securities Law of 1968, provides: "Any condition, stipulation or provision purporting to bind any person acquiring any security to waive compliance with any provision of this law or any rule or order hereunder is void."

Civil Code section 1717, relating to attorney fees, provides at subdivision (a): "Attorney's fees provided for by this section shall not be subject to waiver by the parties to any contract which is entered into after the effective date of this section. Any provision in any such contract which provides for a waiver of attorney's fees is void."

Unlike these other statutory schemes, the FEHA has no express prohibition on parties selecting a forum and/or substantive antidiscrimination law other than California's. Had the Legislature intended to prohibit employers and employees from entering into agreements containing choice-of-law and forum selections clauses in lieu of the protections conferred by the FEHA, it would have so provided, because it plainly knows how to do so. (See *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1397 [241 Cal.Rptr. 67, 743 P.2d 1323] [addressing Fair Employment and Housing Commission's lack of statutory authority to award punitive damages].)

---

[13] Olinick contends that because he is not an inhabitant of New York City, he is not covered by the NYCHRL. BMG asserts that being headquartered in New York City, it is subject to the NYCHRL. Further, as BMG points out, the trial court stayed the action, rather than dismissing it, thereby preserving Olinick's rights in the event the selected forum proves to be unavailable.

> d.  Armendariz *does not prohibit resolution of discrimination claims in a forum other than California, provided the other forum provides comparable substantive rights.*

*Armendariz, supra,* 24 Cal.4th 83, addressed a number of issues related to the validity of a mandatory employment arbitration agreement, i.e., an agreement by an employee to arbitrate wrongful termination or employment discrimination claims rather than filing suit in court, which an employer imposes on a prospective or current employee as a condition of employment. The employees therein contended that employees may not be compelled to arbitrate antidiscrimination claims brought under the FEHA. (*Id.* at p. 90.) *Armendariz* concluded "such claims are in fact arbitrable *if* the arbitration permits an employee to vindicate his or her statutory rights. . . . [I]n order for such vindication to occur, the arbitration must meet certain minimum requirements, including neutrality of the arbitrator, the provision of adequate discovery, a written decision that will permit a limited form of judicial review, and limitations on the costs of arbitration." (*Id.* at pp. 90–91.)

In its discussion, *Armendariz* observed "[c]ertain statutory rights can be waived" in that " '[a]nyone may waive the advantage of a law intended solely for his benefit.' " (*Armendariz, supra,* 24 Cal.4th at p. 100.) However, it recognized that statutory rights established by the FEHA are " 'for a public reason' " (*ibid.*) and "[*i*]*t is indisputable that an employment contract that required employees to waive their rights under the FEHA to redress sexual harassment or discrimination would be contrary to public policy and unlawful.* [¶] In light of these principles, it is evident that an arbitration agreement cannot be made to serve as a vehicle for the waiver of statutory rights created by the FEHA." (*Id.* at pp. 100–101, italics added.) *Armendariz* later reiterates: "As noted, FEHA rights are *unwaivable.*" (*Id.* at p. 112, italics added.)

This language must be read in context. The issue in *Armendariz* was whether FEHA claims are arbitrable. *Armendariz* held such claims are arbitrable "*if* the arbitration permits an employee to vindicate his or her statutory rights." (*Armendariz, supra,* 24 Cal.4th at p. 90.) We do not read *Armendariz* as precluding the formation of an employment contract containing valid forum selection and choice-of-law provisions. An employer and an employee may validly agree to select a forum other than California, and may validly select the substantive law of another jurisdiction, *provided* the employee has an adequate remedy for his or her discrimination claim in the selected forum.

Here, we conclude New York affords Olinick an adequate forum for his age discrimination claims. Therefore, the trial court properly stayed this action to enable Olinick to refile in New York.

## DISPOSITION

The order is affirmed. The parties shall bear their respective costs on appeal.

Croskey, J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 16, 2006, S143859.