[No. G044512. Fourth Dist., Div. Three. June 30, 2011.]

GLOBAL PACKAGING, INC., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
EPICOR SOFTWARE CORPORATION, Real Party in Interest.

**COUNSEL**

Stephen M. Hogan for Petitioner.

No appearance for Respondent.

Gutierrez, Preciado & House, Calvin House; Law Office of Kenneth J. Richard and Kenneth J. Richard for Real Party in Interest.

OPINION .

## BEDSWORTH, J.—

### INTRODUCTION

Petitioner Global Packaging, Inc. (Global Packaging), sought a writ of mandate pursuant to Code of Civil Procedure[1] section 418.10, subdivision (c) after the trial court denied its motion to quash service of summons for lack of jurisdiction. The court found a contractual provision to be a forum selection clause and interpreted this clause as subjecting Global Packaging to its jurisdiction.

We now grant the petition. The trial court improperly conflated venue, forum, and jurisdiction to imply Global Packaging's consent to personal jurisdiction. The summons should have been quashed for lack of personal jurisdiction in California.

### FACTS

Global Packaging, located in Pennsylvania, produces packaging for consumer products. It licensed some software from Epicor Software Corporation (Epicor), a Delaware corporation with its principal place of business in Orange County. Paragraph 11 of Epicor's end user license agreement (agreement) provides in pertinent part: "Any controversy or claims arising out of or relat[][2] to this Agreement shall be venued only in the state or federal court in and [ ] (a) Orange County, California or (b) the jurisdiction in which the Software is located; without regard to their conflict of laws and principle [*sic*]. Such venue shall be determined by the choice of the plaintiff bringing the action."[3]

A dispute arose between Epicor and Global Packaging over payment for the software, and Epicor sued Global Packaging in May 2010 in Orange County. Global Packaging moved to quash service of summons under section 418.10, subdivision (a)(1).[4] It asserted that California had no jurisdiction over

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] The agreement as it appears in the record seems to have been copied in such a way as to lose a small portion of text at the right margin. We have indicated with empty brackets where text looks to be missing.

[3] Paragraph 11 includes a specific California choice-of-law clause in addition to the other reference to choice of law.

[4] Global Packaging based its motion in part on improper service. It later agreed to drop this basis for the motion.

it based on its actual presence within the state or minimum contacts and that paragraph 11 of the agreement, upon which Epicor relied, did not constitute a consent to personal jurisdiction. The trial court denied the motion on the ground paragraph 11 was an enforceable forum selection clause that, by implication, included a consent to jurisdiction. Global Packaging petitioned for review of the denial of the motion to quash.

## DISCUSSION

We review de novo issues of contract interpretation not dependent on any factual findings. (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].)

■ At the outset, we point out that Epicor's "forum" selection clause as it pertains to instituting a lawsuit in California is phrased in terms of a county rather than of the state. Section 395.5 limits the counties in which a corporation may be properly sued in California, and parties cannot make other arrangements by prior agreement. (See *Alexander v. Superior Court* (2003) 114 Cal.App.4th 723, 731 [8 Cal.Rptr.3d 111] ["[I]t is not for the parties or the courts to set venue. That is the role of the Legislature."]; see also *General Acceptance Corp. v. Robinson* (1929) 207 Cal. 285, 289 [277 P. 1039].) The clause is void to the extent that it specifies a California county (*Alexander v. Superior Court, supra,* 114 Cal.App.4th at p. 731), and unless Orange County corresponds to one of the counties identified in section 395.5, Global Packaging could not properly be sued there.[5]

Global Packaging, however, did not object to the clause on this basis, and its motion to quash was denied on the ground that the clause was a forum selection clause constituting Global Packaging's consent to personal jurisdiction in California. Because we can determine this issue as a matter of law, by examining the contract, we do not need to send the case back for further proceedings regarding the propriety of Orange County as a venue. Even considered as a forum selection clause, paragraph 11 of the agreement is insufficient to confer jurisdiction over Global Packaging on a California court.

---

[5] A defendant can, of course, waive this defect by failing to object at the appropriate time after suit is filed. (See, e.g., § 396b, subd. (a).)

The clause is also ineffective to get the parties into federal court in Orange County. The federal court cannot hear a case unless the parties meet the requirements for federal jurisdiction; a private agreement is unavailing. (*Mitchell v. Maurer* (1934) 293 U.S. 237, 244 [79 L.Ed. 338, 55 S.Ct. 162].) And the central district, not the parties, decides whether a case is assigned to the Santa Ana courthouse.

## I. *Jurisdiction*

■ State court jurisdiction is rooted in geography. As the United States Supreme Court stated in that law school favorite *Pennoyer v. Neff*, "The authority of every tribunal is necessarily restricted by the territorial limits of the State in which it is established." (*Pennoyer v. Neff* (1878) 95 U.S. 714, 720 [24 L.Ed. 565].) This territorial concept of jurisdiction has two corollaries: "[E]very State possesses exclusive jurisdiction and sovereignty over persons and property within its territory" and "no State can exercise direct jurisdiction and authority over persons or property without [(i.e., outside)] its territory." (*Id.* at p. 722.) Even when these principles were relaxed by the doctrine of minimum contacts (see *Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154] (*International Shoe*)), jurisdiction was still limited by "presence" in a state as evidenced by activities within its territory (*id.* at p. 317).[6]

■ Generally speaking, a civil court gains jurisdiction over a person through one of four methods. There is the old-fashioned method—residence or presence within the state's territorial boundaries. (*Pennoyer v. Neff, supra,* 95 U.S. at p. 722.) There is minimum contacts—activities conducted or effects generated within the state's boundaries sufficient to establish a "presence" in the state so that exercising jurisdiction is consistent with " 'traditional notions of fair play and substantial justice.' " (*International Shoe, supra,* 326 U.S. at p. 316, quoting *Milliken v. Meyer* (1940) 311 U.S. 457, 463 [85 L.Ed. 278, 61 S.Ct. 339].) A court also acquires jurisdiction when a person participates in a lawsuit in the courthouse where it sits, either as the plaintiff initiating the suit (*Mikulski v. Mikulski* (1969) 2 Cal.App.3d 1047, 1050 [83 Cal.Rptr. 15]) or as the defendant making a general appearance (§ 410.50, subd. (a)).[7] Finally, a party can consent to personal jurisdiction, when it would not otherwise be available. (*Estate of Heil* (1989) 210 Cal.App.3d 1503, 1512 [259 Cal.Rptr. 28].)

Jurisdiction can be regarded from two points of view, that of the individual subject to it and that of the court exercising it.

---

[6] Federal courts, being courts of limited jurisdiction, function according to a different system. The federal venue statutes, 28 United States Code section 1391 et seq., deal with the distribution of cases among the various districts. We do not address federal jurisdiction in this opinion. It should be noted, however, that "venue" in federal court does not have the same meaning as "venue" in state court.

[7] Acquisition of this type of jurisdiction is usually discussed in terms of consent. (See, e.g., *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 [12 Cal.Rptr.3d 711].) It has, however, a distinct territorial component, and we wish to distinguish it from consent by private agreement, which is not limited by territory.

### A. *Jurisdiction from the Individual's Viewpoint*

Although most law-abiding citizens probably manage to escape significant involvement with a court, our legal system recognizes the importance of protecting those who do not avoid this fate. Without question, the people downtown in the black robes can set some very powerful machinery in motion. They can take away one's house (§ 726), one's personal property (§ 514.010) and one's money (§ 695.010). They can freeze one's bank account (§ 487.010, subd. (c)(7)) and remove part of one's paycheck (Fam. Code, § 5230). They can put one's children in foster care (Welf. & Inst. Code, §§ 360, 361.2) or even give them to someone else to rear (*id.*, § 366.26). They can put a person in jail although he has committed no crime. (Code Civ. Proc., § 1218, subd. (a).) Every state has these machines; it is vitally important, then, to limit the number of machines with which someone may have to contend.

■ Our system sets these limits territorially, by state. "Any attempt to exercise authority beyond those limits would be deemed in every other forum . . . an illegitimate assumption of power, and be resisted as mere abuse." (*Pennoyer v. Neff, supra*, 95 U.S. at p. 720.) As Justice Frankfurter observed, "The history of American freedom is, in no small measure, the history of procedure." (*Malinski v. New York* (1945) 324 U.S. 401, 414 [89 L.Ed. 1029, 65 S.Ct. 781] (opn. of Frankfurter, J.).) By putting a person beyond the reach of a court in any state with which he has no significant ties, due process limits on jurisdiction help to protect this freedom. (See *International Shoe, supra*, 326 U.S. at p. 319 ["[Due process] does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations."].)

### B. *Jurisdiction from the Court's Viewpoint*

Jurisdiction both defines and delimits a court's authority. Within its territory, a court, even as constrained by law, has enormous power to bid and forbid. But its power ultimately ends at the state line. (See *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 292 [62 L.Ed.2d 490, 100 S.Ct. 559] [limits on jurisdiction protect states' rights as "coequal sovereigns in a federal system"].) A state court must also contend with the overlay of federal law and power operating within its territory. (See, e.g., *Yellow Freight System, Inc. v. Donnelly* (1990) 494 U.S. 820, 823 [108 L.Ed.2d 834, 110 S.Ct. 1566]; *Cox v. Superior Court* (1959) 52 Cal.2d 855, 861 [346 P.2d 15].)

Courts have not looked benignly on efforts to restrain their power. They have generally sought to repel efforts of others—whether official bodies or

private parties—to call any shots they think they should be calling. (See, e.g., *Vaden v. Discover Bank* (2009) 556 U.S. 49 [173 L.Ed.2d 206, 129 S.Ct. 1262, 1274] [arbitration agreements once seen as restricting court power]; *Railway Company v. Whitton* (1871) 80 U.S. 270, 286 [20 L.Ed. 571] [state law cannot restrict federal court jurisdiction]; *Kulawy v. U.S.* (2d Cir. 1990) 917 F.2d 729 [internal revenue service cannot deprive court of jurisdiction].) Courts once resisted forum selection clauses for this very reason; they were seen as attacks on the courts' power.

## II. *Forum Selection Clauses*

■ In a great many situations, forum and jurisdiction are undifferentiated. The forum—the state where the court is physically located—is coterminous with the court's jurisdiction. The term "jurisdiction" has therefore developed two meanings. Its primary meaning, at least in constitutional due process discussions, is the power or authority a court has over a person. In other contexts, however, it has also come to mean the territory within which this power is or can be exercised. Often this is a distinction without a difference. Both the power and the territory end at the state line. With forum selection clauses, however, the distinction matters. The territory is the forum; the power is the jurisdiction.

Forum selection clauses traditionally faced intense judicial hostility arising from a perceived threat to the court's power within its territory, as discussed above. The hostile courts interpreted such a clause as forbidding them to hear cases when they indisputably had territorially based jurisdiction. (See, e.g., *Parker, Peebles and Knox v. El Saieh* (1928) 107 Conn. 545, 557–558 [141 A. 884]; *Nashua River Paper Co. v. Hammermill Paper Co.* (1916) 223 Mass. 8, 15–16 [111 N.E. 678], and cases cited.) They looked on a forum selection clause as an effort by private parties to deprive them of their rightful power, and they refused to enforce the clauses as contrary to public policy. (See, e.g., *Insurance Company v. Morse* (1874) 87 U.S. 445, 451 [22 L.Ed. 365]; *Carbon Black Export, Inc. v. The S.S. Monrosa* (5th Cir. 1958) 254 F.2d 297, 299–300; *Nute v. Hamilton Mutual Insurance Co.* (1856) 72 Mass. 174, 184 [6 Gray 174].)

Eventually a formula was contrived to present these clauses in a way that smoothed ruffled judicial feathers. Parties moving to enforce forum selection clauses said, in effect, "We are not saying you *cannot* hear this case, Your Honor. Of course you can hear it. Instead, we are asking you to exercise your discretion and decline to hear it in favor of enforcing the bargain between the parties." This is the formula adopted by the United States Supreme Court in *The Bremen v. Zapata Off-Shore Co.* (1972) 407 U.S. 1, 12 [32 L.Ed.2d 513, 92 S.Ct. 1907] (*The Bremen*), the case that gave the official imprimatur to

forum selection clauses as embodying the modern and cosmopolitan approach to commercial disputes.[8] (See also *Central Contracting Co. v. Maryland Casualty Co.* (3d Cir. 1966) 367 F.2d 341, 345 [court asked to decline to exercise jurisdiction].)

California's Supreme Court, not to be outdone in keeping up with modern trends, endorsed forum selection clauses in *Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 496 [131 Cal.Rptr. 374, 551 P.2d 1206]. It too adopted the exercise-of-discretion approach to their enforcement. (*Id.* at p. 495.)

██ In giving its blessing to the enforcement of forum selection clauses, the United States Supreme Court in effect approved severing forum from territorially based jurisdiction in this setting. A party could now find itself bound to litigate a dispute in a territory—a forum—where it had no "presence" whatsoever, either literally or in the minimum-contacts sense, and in which it had made no general appearance. In fact, that is what the forum selection clause in *The Bremen* contemplated. The American oil company and the German towing company that were the parties in *The Bremen* chose London in part *because* it lacked any ties to either party. They were looking for a neutral forum. (*The Bremen, supra,* 407 U.S. at p. 13.) So too, a forum selection clause could designate Delaware as the forum, perhaps out of admiration for the Delaware courts' expertise in corporate law, even though no one from any of the signatory companies had ever set foot in Delaware.[9]

In such a situation, there might well be no territorially based means of obtaining personal jurisdiction. Does an agreement to litigate in a certain location, a forum, then necessarily imply an additional, separate agreement to submit to the jurisdiction of that forum, one in which personal jurisdiction would not otherwise be available? We hold it does not. Given the crucial role played by limits on jurisdiction in the American legal system, and in particular their importance as a preserver of individual liberty, we cannot agree that consenting to a location in and of itself carries with it a consent to personal jurisdiction.[10]

---

[8] The court in *The Bremen* also noted that courts' hostility to forum selection clauses rested on "historical judicial resistance to any attempt to reduce the power and business of a particular court" and remarked that, while this resistance was perhaps understandable in an earlier and more leisured age, it was completely outmoded in an era of overcrowded dockets. (*The Bremen, supra,* 407 U.S. at p. 12.) Nowadays, the court implied, a judge would be only too happy to be "deprived" of having to deal with another case.

[9] Whether a court would accept such a case is another matter, one we need not address here.

[10] We are aware of one California case that has held the opposite. (*Berard Construction Co. v. Municipal Court* (1975) 49 Cal.App.3d 710, 721 [122 Cal.Rptr. 825].) As discussed above, we disagree that a consent to venue in one county constitutes a consent to personal jurisdiction in California (*ibid.*), or even that a consent to venue is enforceable if it contravenes the venue

In the forum-selection-clause context, forum and jurisdiction are distinct concepts with different legal implications.[11] To give but one example, a plaintiff opposing a motion to quash for lack of personal jurisdiction has the initial burden of proving facts justifying the exercise of jurisdiction. (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062 [29 Cal.Rptr.3d 33, 112 P.3d 28].) The allocation of the burden comports with the importance to due process of limiting jurisdiction. A forum selection clause, however, is presumed valid; the party opposing its enforcement bears the "substantial" burden of proving why it should *not* be enforced. (*CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1353 [46 Cal.Rptr.2d 412]; see also *Smith, Valentino & Smith, Inc. v. Superior Court, supra*, 17 Cal.3d at p. 496.) Using a forum selection clause as the sole means of establishing personal jurisdiction in effect places the burden of proof on exercise of jurisdiction on the defendant.

The implied waiver of due process protection underlying this situation finds an analogy in the cases involving motions to compel arbitration. Courts addressing this issue hold that a party's constitutional right to trial by jury is not waived by implication or inference. (See, e.g., *Adajar v. RWR Homes, Inc.* (2008) 160 Cal.App.4th 563, 569 [73 Cal.Rptr.3d 17]; *Fitzhugh v. Granada Healthcare & Rehabilitation Center, LLC* (2007) 150 Cal.App.4th 469, 474 [58 Cal.Rptr.3d 585]; *Goliger v. AMS Properties, Inc.* (2004) 123 Cal.App.4th 374, 378 [19 Cal.Rptr.3d 819]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 804 [79 Cal.Rptr.2d 273]; *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1507 [256 Cal.Rptr. 6].) We regard the due process right protected by limits on jurisdiction to be at least as important as the right to a jury trial. (Cf. *Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, 909 [97 Cal.Rptr.2d 215] [party must have adequate notice that it is agreeing to submit to personal jurisdiction].)

■ Enforcement of forum selection clauses is an offshoot of the principle of inconvenient forum. (See, e.g., *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1294 [42 Cal.Rptr.3d 268].) Inconvenient forum usually assumes that jurisdiction exists or can be obtained; its main concerns lie elsewhere—the location where witnesses or documents can be found, crowded local courts, keeping down costs, the interests of each prospective forum in adjudicating the controversy. (See *Stangvik v. Shiley, Inc.* (1991) 54 Cal.3d 744, 751 [1 Cal.Rptr.2d 556, 819 P.2d 14].) Inconvenient forum is not designed to protect due process rights.

---

statutes. Cases pertaining to jurisdiction in arbitrations are inapposite in light of section 1293, which deals specifically with this subject.

[11] They are distinct in other contexts as well. For example, section 410.40 allows big-ticket contract actions brought by and against nonresidents to have a forum in California, but only if the out-of-state defendant agrees to personal jurisdiction in California (among other conditions).

 The trial court posed a rhetorical question: "[W]hy would these parties bother to include a venue provision [(i.e., paragraph 11)] and at the same time omit a forum selection clause?" In the first place, the "parties" did not include this provision; Epicor did. The paragraph occurs in a license agreement encompassing terms obviously meant to be used with other Epicor customers. The paragraph refers specifically to Orange County, where Epicor has its principal place of business, but vaguely to "the jurisdiction [(i.e., the territory)] in which the Software is located" to establish the customer's forum. As to why bother, the ways in which contract drafters can fall down on the job are unlimited. Under California law, contracts are interpreted by an objective standard; the words of the contract control, not one party's subjective intentions. (*Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 133 [48 P.2d 13].) If Epicor meant "forum," it should have said "forum," not "venue," and it should have specified a state (a forum), not a county (a venue).

Respondent poses a similar rhetorical question, "Why would Epicor include such a clause unless it intended to be able to subject customers to jurisdiction in the chosen forum?" To which we might pose other rhetorical questions: If Epicor meant paragraph 11 to include a consent to jurisdiction, why not say so? Why leave it to implication? It is ridiculously easy to prepare and insert a clause embodying a consent to jurisdiction. In this case it could have been accomplished by adding some such words as "and the parties hereto consent to personal jurisdiction for this purpose in the forum chosen by the plaintiff bringing the action" after "determined by the choice of the plaintiff bringing the action" in paragraph 11. Such explicitness would have had two salutary effects: it would have apprised Global Packaging that it was consenting to jurisdiction outside Pennsylvania, and it would very probably have kept this contract interpretation dispute out of the court.[12]

 A court should not be called upon to function as a backstop for sloppy contract drafting. A judge should not have to spend court time sorting out the meanings and applications of common legal terms—"venue," "forum," and "jurisdiction." Failing to pay attention does and should have consequences. As the court stated, with obvious exasperation, in *General Motors Accept. Corp. v. Codiga* (1923) 62 Cal.App. 117, 120 [216 P. 383], "[C]ourts are not inclined to go out of their way, when confronted with an invalid covenant, to search for ways and means of saving perchance something from the wreck and thus placing an interpretation on the contract which the parties never wrote therein."

---

[12] Inserting such a clause would by no means repair all of the numerous deficiencies of paragraph 11, only the lack of consent to jurisdiction.

The trial court took a clause referring to "venue," translated "venue" into "forum," and then extended "forum" to include personal jurisdiction. This stretches paragraph 11 beyond what its actual words can bear and pulls Epicor out of a pit of its own digging. Global Packaging cannot be haled into a California court on that basis.

## DISPOSITION

The petition is granted. The superior court is ordered to enter an order granting the motion of Global Packaging Corporation to quash service of summons. Petitioner is to recover its costs.

Rylaarsdam, Acting P. J., and Moore, J., concurred.