******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MERIBEAR PRODUCTIONS, INC. *v.* JOAN E.
FRANK ET AL.
(AC 37507)

Gruendel, Alvord and Pellegrino, Js.*

*Argued February 3—officially released May 10, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Tyma, J.)

*Michael S. Taylor*, with whom were *James P. Sexton*
and, on the brief, *Matthew C. Eagan*, for the appel-
lants (defendants).

*Anthony J. LaBella*, with whom, on the brief, was
*Deborah M. Garskof*, for the appellee (plaintiff).

*Opinion*

ALVORD, J. The defendants, Joan E. Frank and George A. Frank, appeal from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiff, Meribear Productions, Inc. The plaintiff's three count complaint sought the common-law enforcement of a foreign judgment, and, alternatively, damages for breach of contract or quantum meruit. On appeal, the defendants claim that the court improperly (1) enforced the foreign judgment against George Frank after concluding that he had minimum contacts with California that warranted the exercise of its jurisdiction, (2) concluded that the contract signed by Joan Frank was enforceable even though it failed to comply with certain provisions of the Home Solicitation Sales Act,[1] and (3) awarded double damages to the plaintiff. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to the defendants' claims. The defendants, who are husband and wife, resided at 3 Cooper Lane in Westport. They decided to sell their home and hired the plaintiff to provide design and decorating services, which included the staging of home furnishings owned by the plaintiff, in an effort to make their residence more attractive to potential purchasers. The plaintiff is a California corporation with its principal place of business located in Los Angeles. The plaintiff's representatives met with George Frank, his office assistant, and the defendants' realtor in Connecticut to negotiate the terms of a staging services agreement.

On March 13, 2011, Joan Frank signed a "Staging Services and Lease Agreement"[2] after George Frank made changes to some of its provisions. The agreement expressly provided that addendum B, titled "Credit Card Authorization," was "a part of this Agreement . . . ." George Frank signed addendum B, which authorized the plaintiff to charge his credit card for $19,000 "resulting from this staging/design agreement." Before signing the addendum, he crossed out proposed language that would have made him liable for any additional charges incurred by the plaintiff.

Under the terms of the staging services agreement, the initial payment of $19,000 was nonrefundable and was payable prior to the delivery and installation of the furnishings. The initial lease period was for four months, but the term would expire sooner if the contingencies in any purchase agreement for the property were fulfilled or waived. The agreement further provided that if the defendants' property was not sold within the initial four month period, the lease would continue on a month-to-month basis at a rental amount of $1900 per month. The testimony at trial established that the initial $19,000 payment covered the plaintiff's design services, the delivery of the staging furnishings,

the first four months of the lease, and the cost of removing the furnishings upon the sale of the property or the termination of the agreement. Either party could terminate the agreement by providing a timely written notice.

The furnishings were delivered and staged. Four months passed, and the property had not been sold and neither party had terminated the staging services agreement. The plaintiff sent invoices for the additional monthly rental amounts, which never were paid by the defendants. When the plaintiff sent a crew of movers to the defendants' property to remove the furnishings, they were denied access to the home. The plaintiff's staging inventory remained in the defendants' home through the time of trial. At oral argument before this court, the plaintiff's counsel represented that the defendants' property had been sold, but the plaintiff had no knowledge as to the whereabouts of its furnishings.

The plaintiff commenced an action against the defendants in the Superior Court of California in the county of Los Angeles, and, on August 7, 2012, it obtained a default judgment against them in the amount of $259,746.10. On October 9, 2012, the plaintiff commenced the present action in the Superior Court in Connecticut to enforce the foreign judgment.[3] The plaintiff subsequently amended its complaint to include counts for breach of contract and quantum meruit. The defendants filed an answer with special defenses, claiming, inter alia, that the foreign default judgment was void because the California court lacked personal jurisdiction over them[4] and that the staging services agreement was unenforceable because it failed to comply with certain provisions in the Connecticut Home Solicitation Sales Act.

Following a trial to the court, the court issued its memorandum of decision on October 14, 2014. The court made the following determinations: (1) George Frank did not sign and was not a party to the staging services agreement, but he did sign addendum B, which was attached to the agreement and authorized the plaintiff to charge $19,000 on his Visa credit card; (2) the defendants' residence is a luxury home in an affluent community, and the furnishings provided by the plaintiff "appear[ed] to be appropriate for such a home"; (3) the defendants defaulted on their rent obligation to the plaintiff; (4) the plaintiff had prepared an inventory of the furnishings provided to the defendants, and values were ascribed to each piece based on standard industry pricing for used furniture; (5) although the defendants claimed that they asked the plaintiff to remove the inventory from their residence, the more credible evidence was that no such demand ever had been made; (6) the plaintiff sent a crew of movers to remove the inventory on more than one occasion, but the defendants denied the movers access to the premises; (7)

Joan Frank was not properly served with process in the California action, and the California Superior Court lacked personal jurisdiction over her; (8) George Frank was properly served with process in the California action, and the California Superior Court possessed personal jurisdiction over him; (9) the staging services agreement was enforceable against Joan Frank because the parties' transaction was specifically excluded by statute from the definition of a home solicitation sale; (10) "George Frank's testimony on the procedural and substantive issues [was] manufactured and lacking in truthfulness"; (11) George Frank was liable to the plaintiff under the first count of the complaint for common-law enforcement of the California judgment in the amount of $259,746.10; and (12) Joan Frank was liable to the plaintiff under the second count of the complaint for breach of the staging services agreement in the amount of $283,106.45.[5] This appeal followed.

I

The defendants' first claim is that the trial court improperly enforced the California judgment against George Frank.[6] Although they do not claim that he was not properly served with process, they argue that he did not have sufficient minimum contacts with California to warrant the exercise of its court's jurisdiction over him. Specifically, they claim that his signing of addendum B to the staging services agreement, which authorized the plaintiff to charge his Visa credit card for $19,000, did not meet the due process requirements articulated in *International Shoe Co.* v. *Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945), and its progeny. They also argue that, contrary to the plaintiff's position, he did not consent to jurisdiction in California by virtue of a forum selection clause in the agreement because he was not a party to that agreement. Additional facts are necessary for the resolution of this claim.

Paragraph 19 of the staging services agreement signed by Joan Frank contained the following sentences, which included a forum selection clause: "This Agreement constitutes the entire agreement between the parties. This Agreement and the rights of the parties hereunder shall be determined, governed by and construed in accordance with the internal laws of the State of California without regard to conflicts of laws principles. Any dispute under that Agreement shall only be litigated in any court having its situs within the City of Los Angeles, California, and *the parties consent and submit to the jurisdiction of any court located within such venue* . . . ." (Emphasis added.)

George Frank added an additional sentence at the end of paragraph 19 of the staging services agreement that provided: "Since this is a contract for an agreement taking place in the state of Connecticut, Connecticut laws will supersede those of California." He made no changes to the forum selection clause. As previously

mentioned, the agreement also expressly provided that addendum B was "a part of this Agreement," and addendum B expressly references "this staging/design agreement." It is undisputed that only Joan Frank signed the staging services agreement, and only George Frank signed addendum B.

We begin with the legal principles that govern our analysis of this jurisdictional issue. The validity of the California judgment in Connecticut implicates the full faith and credit clause of the United States constitution.[7] "As a matter of federal law, the full faith and credit clause requires a state court to accord to the judgment of another state the same credit, validity and effect as the state that rendered the judgment would give it. . . . This rule includes the proposition that lack of jurisdiction renders a foreign judgment void. . . . A party can therefore defend against the enforcement of a foreign judgment on the ground that the court that rendered the judgment lacked personal jurisdiction, unless the jurisdictional issue was fully litigated before the rendering court or the defending party waived the right to litigate the issue." (Citations omitted.) *Packer Plastics, Inc.* v. *Laundon*, 214 Conn. 52, 56, 570 A.2d 687 (1990).

"The United States Supreme Court has consistently held, however, that the judgment of another state must be presumed valid, and the burden of proving a lack of jurisdiction 'rests heavily upon the assailant.' . . . Furthermore, the party attacking the judgment bears the burden of proof regardless of whether the judgment at issue was rendered after a full trial on the merits or after an ex parte proceeding." (Citations omitted.) Id., 57.

"To determine whether a foreign court lacked jurisdiction, we look to the law of the foreign state." (Internal quotation marks omitted.) *J. Corda Construction, Inc.* v. *Zaleski Corp.*, 98 Conn. App. 518, 524, 911 A.2d 309 (2006).[8] "Generally speaking, a civil court gains jurisdiction over a person through one of four methods. There is the old-fashioned method—residence or presence within the state's territorial boundaries. . . . There is minimum contacts—activities conducted or effects generated within the state's boundaries sufficient to establish a presence in the state so that exercising jurisdiction is consistent with traditional notions of fair play and substantial justice. . . . A court also acquires jurisdiction when a person participates in a lawsuit in the courthouse where it sits, either as the plaintiff initiating the suit . . . or as the defendant making a general appearance. . . . Finally, a party can consent to personal jurisdiction, when it would not otherwise be available." (Citations omitted; internal quotation marks omitted.) *Global Packaging, Inc.* v. *Superior Court*, 196 Cal. App. 4th 1623, 1629, 127 Cal. Rptr. 3d 813 (2011).

"*Consent is considered as one of four traditional*

*bases for the exercise of personal jurisdiction over a nonresident defendant and it is separate from the minimum contacts analysis.* . . . Consent is [a] traditional basis of jurisdiction, existing independently of long-arm statutes . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *Nobel Farms, Inc.* v. *Pasero*, 106 Cal. App. 4th 654, 658, 130 Cal. Rptr. 2d 881 (2003). "Express consent to a court's jurisdiction will occur by generally appearing in an action . . . or by a valid forum-selection clause designating a particular forum for dispute resolution regardless of residence. . . . Consent to a court's jurisdiction may also be implied by conduct." (Citations omitted.) Id.

"[I]t is settled . . . that parties to a contract may agree in advance to submit to the jurisdiction of a given court . . . . While subject matter jurisdiction cannot be conferred by consent, personal jurisdiction can be so conferred, and consent may be given by a contract provision . . . . (Citations omitted; internal quotation marks omitted.) *Berard Construction Co.* v. *Municipal Court*, 49 Cal. App. 3d 710, 721, 122 Cal. Rptr. 825 (1975).[9] In the present case, the staging services and lease agreement expressly provided that "[a]ny dispute under [the] Agreement shall only be litigated in any court having its situs within the City of Los Angeles, California, and the *parties consent and submit to the jurisdiction of any court located within such venue.*"[10] (Emphasis added.) The defendants argue, however, that the trial court found that Frank George had not signed the staging services agreement. They claim that he signed only the addendum, and, accordingly, he did not consent to jurisdiction as provided in the agreement. It is true, as the court found, that he did not sign the agreement. Nevertheless, the agreement incorporated the addendum that he did sign, the addendum references the agreement, and George Frank admitted that he made changes to both the agreement and the addendum.[11] He clearly was aware of the provisions in both the agreement and the addendum, in that he reviewed them and amended them. Under these circumstances, we agree with the plaintiff that George Frank consented to personal jurisdiction in California and that the default judgment was not void as to him.[12]

## II

The defendants' next claim is that the staging services agreement signed by Joan Frank was not enforceable because it failed to comply with certain provisions of the Home Solicitation Sales Act (act). See footnote 1 of this opinion. The defendants argue that the agreement did not contain the notice of cancellation provisions required by the act, and that the court erroneously concluded that the parties' transaction was exempted as a home solicitation sale by General Statutes § 42-134a (a) (5).[13] We agree with the court's determination that this particular transaction was not

governed by the act and, accordingly, that Joan Frank was liable to the plaintiff for breach of the agreement.

It is undisputed that the plaintiff and Joan Frank entered into a staging services agreement whereby the plaintiff would provide design and decorating services, which included providing home furnishings such as furniture, fine arts, rugs and plants, for the purpose of making the defendants' residence more attractive to potential purchasers. There was testimony at trial that the defendants' real estate agent initiated the contact with the plaintiff. The parties agree that the plaintiff's representatives met with George Frank, his assistant, and his realtor at the defendants' residence. It also appears that the contract was signed at the defendants' residence. Therefore, unless the transaction is statutorily exempt from the act, the staging services agreement should have included the notice of cancellation required by the act.

The court concluded that the parties' transaction was exempt because "[t]he transaction pertain[ed] to the defendants' sale of their real property located at 3 Cooper Lane [in] Westport . . . ." In reaching that conclusion, the court found the meaning of the language in § 42-134a (a) (5) to be clear and unambiguous.[14]

The defendants' claim requires us to interpret § 42-134a (a) (5). The proper construction of this statutory exemption is a question of law over which we exercise plenary review. "When interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. General Statutes § 1-2z. . . . However, [w]hen a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Tuxis Ohr's Fuel, Inc.* v. *Administrator, Unemployment Compensation Act*, 309 Conn. 412, 421–22, 72 A.3d 13 (2013).

The defendants claim that the statutory language that excludes transactions "pertaining to the sale . . . of real property" is ambiguous, and that it "reasonably means that contracts for the sale or lease of a home are not included within the scope of the [a]ct. In other words, if a realtor shows up at the door, any deal ulti-

mately reached between the realtor and the homeowner need not meet [the act's] requirements." The plaintiff argues that the language is clear and unambiguous, and on its face encompasses staging services provided "solely for the purpose of selling real estate . . . . A staging contract is entirely for the purpose of improving the appearance of a residence in order to increase its appeal to potential buyers."

We agree that the language that exempts transactions "pertaining to the sale or rental of real property" is susceptible to more than one reasonable interpretation. In that regard, we disagree with the trial court's determination that the language is clear and unambiguous. Nevertheless, for the reasons that follow, we agree with the court that the parties' transaction in this case does fall within the exemption language and was not subject to the requirements of the act.

The legislative history is not particularly helpful. The exemption language at issue was introduced in 1976 when the legislature amended the provisions of the act to conform to the Federal Trade Commission's rules promulgated in 1974 that governed door-to-door sales. See 19 S. Proc., Pt. 3, 1976 Sess., p. 1241, remarks of Senator Louis Ciccarello; Public Acts 1976, No. 76-165, § 1. Connecticut's initial act was enacted by the legislature in 1967 "to protect consumers against certain practices that were carried out by door-to-door salesmen . . . ." 19 H.R. Proc., Pt. 6, 1976 Sess., p. 1031, remarks of Representative William A. Collins. The act, as amended, "[brought] our current statute into conformity with the Federal Trade Commission rules so that no longer [would] sellers and buyers be confused with having to deal with two separate and somewhat different sets of regulations." Id. The actual exemption language at issue in this appeal, however, was not discussed.

The defendants refer to two sentences in the Federal Register that they claim provide support for their position that the relevant exemption language was added to clarify that the act did not apply to real property transactions: "Insofar as the sale of real property itself is concerned, neither the Commission nor members of the real estate sales industry believe that such sales would be subject to the rule as land would not fall within the scope of the definition of consumer goods or services. However, transactions in which a consumer engaged a real estate broker to sell his home or to rent and manage his residence during a temporary period of absence may fall within the class of transactions to which the rule would apply." Cooling-Off Period for Door-to-Door Sales, 37 Fed. Reg. 22,948 (October 26, 1972). The defendants argue that the explanation in the Federal Register makes it clear that "transactions that are very closely related to the sale or rental of real estate, including an agreement for broker services, still

might fall under the act."

Following the quoted language in the Federal Register was a footnote that referenced a letter from the National Association of Real Estate Boards. It is not surprising that a realtors' association would be concerned that the Federal Trade Commission's rule might be read broadly to include an agreement for real estate broker services. Moreover, in further explaining the rule and its exceptions, the Federal Register contains the following language: "With regard to the real property provision, it is emphasized that it is not intended to apply to the sale of goods or services such as siding, home improvements, and driveway and roof repairs." Cooling-Off Period for Door-to-Door Sales, 37 Fed. Reg. 22,949 (October 26, 1972). This additional explanation of the exemption focuses on the particular type of door-to-door sales that target homeowners and their real estate.

Neither the Federal Register nor Connecticut's legislative history provides a definitive interpretation of the exemption language at issue. In construing the language as written by the legislature, we note that § 42-134a (a) (5) does *not* state that only contracts for the sale or rental of real property are exempt from the provisions of the act, but, rather, it exempts a "transaction . . . *pertaining* to the sale or rental of real property." (Emphasis added.) The word "pertaining" is not defined in the statute, and, accordingly, we look to the common and ordinary meaning of the word. Black's Law Dictionary defines the word pertain as "[t]o relate to; to concern." Black's Law Dictionary (9th Ed. 2009). It is undisputed that the staging services and lease agreement in the present case was entered into for the purpose of making the defendants' residence more appealing to prospective buyers. In other words, that transaction "related to" or "concerned" the sale of their real property in Westport.

The defendants argue that such a broad interpretation would result in exempting a myriad of services and goods that are tangentially related to the prospective sale of a property. For example, if a homeowner is approached by a door-to-door salesman who is selling siding or new windows or who provides landscaping services, a homeowner may enter into a contract with such a salesman to make his or her home more appealing to prospective buyers. According to the defendants, such goods and services would be exempt from the provisions of the act because they are related to the prospective sale of real property. We do not agree.

Landscaping, siding, and new windows inure to the continuing benefit of the property whether that property is sold or retained by the homeowner. The staging services and lease agreement in the present case was entered into for the sole purpose of selling the defendants' home in Westport. The staging of furnishings owned by the plaintiff had no conceivable benefit to

the real estate other than making it more attractive to potential buyers. The staging services agreement itself provided that the initial lease term was four months, but that it would expire even sooner if "the buyer's contingencies are either satisfied or waived with respect to the purchase of the Property . . . ." The singular purpose of the agreement, therefore, was to facilitate the sale of the real property, such that the agreement would terminate once that particular purpose had been achieved.

Accordingly, we agree with the trial court that the agreement in the present case was a transaction that pertained to the sale of real property. We conclude that the staging services agreement was not subject to the provisions of the act and that the court properly determined that it was enforceable against Joan Frank.

### III

The defendants' final claim is that the court improperly awarded double damages when it rendered judgment against George Frank under the first count of the complaint in the amount of $259,746.10, and rendered judgment against Joan Frank under the second count of the complaint in the amount of $283,106.45. The defendants claim that the two amounts represent the same loss, and that the court's judgment violates "the principle that a litigant may recover just damages for the same loss only once." (Internal quotation marks omitted.) *Rowe* v. *Goulet*, 89 Conn. App. 836, 849, 875 A.2d 564 (2005). The defendants additionally argue that the contract damages awarded against Joan Frank improperly included damages for conversion of the home furnishings.

The judgment of the trial court was not improper. "Plaintiffs are not foreclosed from suing multiple defendants, either jointly or separately, for injuries for which each is liable, nor are they foreclosed from obtaining multiple judgments against joint tortfeasors. . . . This rule is based on the sound policy that seeks to ensure that parties will recover for their damages. . . . The possible rendition of multiple judgments does not, however, defeat the proposition that a litigant may recover just damages only once. . . . Double recovery is foreclosed by the rule that only one satisfaction may be obtained for a loss that is the subject of two or more judgments." (Citations omitted; footnotes omitted; internal quotation marks omitted.) *Gionfriddo* v. *Gartenhaus Cafe*, 211 Conn. 67, 71–72, 557 A.2d 540 (1989). "[I]t is still the law that satisfaction of a judgment as to one tortfeasor is satisfaction as to all. . . . [N]othing we say today in any way changes the time-honored rule that an injured party is entitled to full recovery only once for the harm suffered." (Citation omitted; internal quotation marks omitted.) Id., 74. "This rule applies equally to the law of contracts." Id., 74 n.9.

Accordingly, the plaintiff may recover the full amount awarded by the trial court based on count one or count two of its complaint. It may, however, recover only once for the harm that it suffered. There is nothing in the record to indicate that the court improperly intended that the plaintiff was entitled to recover double damages.[15]

The defendants' claim that the court's award of contract damages was improper is likewise without merit. "As a general rule, the determination of damages involves a question of fact that will not be overturned on appeal unless it is clearly erroneous." *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 838, 3 A.3d 992 (2010). In calculating the amount of damages, "[t]he general rule of damages in a breach of contract action is that the award should place the injured party in the same position as he would have been in had the contract been performed." (Internal quotation marks omitted.) Id., 839.

In the present case, the court determined that Joan Frank had breached the staging services agreement by failing to pay the rent due, by wrongfully using the furniture in the defendants' personal residence for approximately three years, and by thwarting the plaintiff's efforts to retrieve its inventory, thereby resulting in the total loss of that inventory to the plaintiff. The court found credible the evidence presented by the plaintiff as to the value of its inventory. Accordingly, the court awarded the plaintiff $235,598 for the inventory loss and $47,508.45 for the rental loss and related late fees, for a total amount of $283,106.45.

The defendants do not challenge the court's factual findings relating to the ways in which Joan Frank breached the agreement in this appeal. They challenge only the court's calculation of damages. On the basis of the court's findings and the evidence presented by the plaintiff, the defendants have failed to establish that the court's award of contract damages was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of the judges reflects their seniority status on this court as of the date of oral argument.

[1] General Statutes § 42-134a et seq.

[2] Joan Frank testified at trial that title to the property to be staged was in her name.

[3] "The Uniform Enforcement of Foreign Judgments Act, General Statutes § 52-604 et seq., provides a simplified procedure to enforce foreign judgments not obtained by default. General Statutes § 52-607 provides that, notwithstanding the provisions of that act, [t]he right of a judgment creditor to proceed by an action on the judgment . . . remains unimpaired." (Internal quotation marks omitted.) *Maltas* v. *Maltas*, 298 Conn. 354, 357 n.3, 2 A.3d 902 (2010).

In the present case, the California foreign judgment was a default judgment, and, accordingly, the plaintiff sought the common-law enforcement of that judgment.

[4] There is no claim that process in Connecticut was not properly served or

that the Connecticut Superior Court lacked jurisdiction over the defendants.

[5] The court did not consider the plaintiff's alternative basis for recovery, i.e., its claim for quantum meruit. The court stated that it was not necessary to consider that count of the complaint because of its conclusion that Joan Frank had breached the contract.

[6] The plaintiff has not challenged the court's determinations that Joan Frank was not properly served with process in the California action, and, thus, the California Superior Court lacked personal jurisdiction over her.

[7] The full faith and credit clause of the constitution of the United States provides in relevant part that "Full Faith and Credit shall be given in each State to the . . . judicial Proceedings of every other State. . . ." U.S. Const., art. IV, § 1.

[8] All of the parties are in agreement that this court must look to California law to determine whether the California Superior Court possessed personal jurisdiction over George Frank.

[9] Connecticut case law is in accord. When a defendant challenged a California judgment on the ground that the California Superior Court lacked personal jurisdiction over him, this court held: "The defendant focuses on lack of jurisdiction over his person. Unlike subject matter jurisdiction, however, personal jurisdiction may be created through consent or waiver. . . . Connecticut case law is clear that the courts will uphold an agreement of the parties to submit to the jurisdiction of a particular tribunal." (Citation omitted; internal quotation marks omitted.) *Phoenix Leasing, Inc.* v. *Kosinski*, 47 Conn. App. 650, 653, 707 A.2d 314 (1998).

The defendant in *Phoenix Leasing, Inc.*, had argued that the forum selection clause at issue did not provide California with personal jurisdiction over him because it failed to establish the minimum contacts required by due process before a court may exercise jurisdiction over a defendant. This court disagreed: "The defendant cites no cases in which the minimum contacts rule has been relied on to void a forum selection clause. Indeed, forum selection clauses have generally been found to satisfy the due process concerns targeted by the minimum contacts analysis." Id.

[10] This express consent to jurisdiction distinguishes this case from the holding in *Global Packaging, Inc.* v. *Superior Court*, supra, 196 Cal. App. 4th 1632–34, where the Court of Appeals determined a venue selection clause was not a forum selection clause that conferred jurisdiction because the clause did not explicitly state that the parties consented to the personal jurisdiction of the California Superior Court.

[11] An addendum is defined in Black's Law Dictionary as "[s]omething to be added, esp. to a document; a supplement." Black's Law Dictionary (9th Ed. 2009).

[12] We note that the trial court focused on the plaintiff's claim of minimum contacts rather than its argument that George Frank consented to jurisdiction. As our discussion indicates, we agree with the trial court that the California Superior Court had personal jurisdiction over George Frank, but for a different reason than that propounded by the trial court. See *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 682, 657 A.2d 1087 (1995).

We do not disagree with the court's conclusion that California could exercise jurisdiction pursuant to its long arm statute and that the requisite minimum contacts had been established by the facts as found by the court and as recited in this opinion. In this regard, we would add that the court expressly found that George Frank's testimony was "lacking in truthfulness," and that there was testimony at trial that it was the defendants' realtor who initiated contact with the plaintiff.

We do not, however, provide an analysis addressed to the long arm statute and minimum contacts with California because we have determined that the plaintiff's argument that George Frank had consented to jurisdiction is a more compelling argument.

[13] General Statutes § 42-134a (a) (5) provides in relevant part: " 'Home solicitation sale' means a sale, lease, or rental of consumer goods or services, whether under single or multiple contracts, in which the seller or his representative personally solicits the sale, including those in response to or following an invitation by the buyer, and the buyer's agreement or offer to purchase is made at a place other than the place of business of the seller. The term 'home solicitation sale' does not include a transaction . . . pertaining to the sale or rental of real property . . . ."

[14] The defendants do not challenge the court's determinations that Joan Frank breached the agreement or that they failed to establish their special defenses of failure to mitigate damages and breach of the covenant of good faith and fair dealing. The defendants rely solely on their argument that

the failure to comply with all of the provisions of the act rendered the agreement unenforceable.

[15] In fact, the plaintiff acknowledged in its appellate brief and during oral argument before this court that it may not recover double damages for its loss.

_____