Filed 3/5/25  Johnston v. Sensei AG Holdings CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| JEFFREY JOHNSTON, | B334773 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. 23STCV19796 |
| v. | |
| SENSEI AG HOLDINGS, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Michael P. Linfield, Judge.  Reversed and remanded with directions.

Sheppard, Mullin, Richter & Hampton, Jennifer Redmond, Sami Hasan, John Ellis, and Shayla Griffin for Defendant and Appellant.

Aclient, Ruben D. Escalante, and Robert A. Escalante for Plaintiff and Respondent.

————————————————

**SUMMARY**

Defendant Sensei Ag Holdings, Inc. (Sensei or defendant) appeals from an order denying its motion to compel arbitration of plaintiff Jeffrey Johnston's lawsuit alleging violations of the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.). The trial court concluded the arbitration agreement was unconscionable. The court found a "complete lack of mutuality," because "only Plaintiff and not Defendant is bound by the arbitration agreement." The court further found the discovery provision incorporating JAMS's employment arbitration rules was unconscionable, and that a provision requiring arbitration in San Francisco further added to the unconscionability of the agreement. The court found substantive unconscionability permeated the agreement and declined to sever the unconscionable terms.

We reverse the trial court's order. The court's lack of mutuality finding is demonstrably wrong, based on the plain language of the arbitration agreement. The discovery provision is not unconscionable, as confirmed by the principles stated in *Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478 (*Ramirez*). And, assuming the San Francisco venue provision is unconscionable, it is readily severable from the agreement (and in any event, plaintiff admits that defendant, after filing its motion to compel arbitration, offered to hold the arbitration in Los Angeles).

Plaintiff makes other claims of unconscionable provisions that were not mentioned by the trial court, but none of them has merit either.

**FACTS AND LEGAL PRINCIPLES**

**1.    The Arbitration Provisions**

The agreement at issue is titled "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration

2

Agreement" (the employment agreement).  (Boldface, capitalization & underscoring omitted.)  Section 11 of the employment agreement governs "Arbitration and Equitable Relief" (the arbitration agreement).  The entire section is printed in capital letters (which we omit); the italics are ours.  Among its provisions are these.

The first sentence states:  "*In consideration of* my employment with the company, *its promise to arbitrate all employment-related disputes with me*, and my receipt of compensation and other company benefits, at present and in the future*, I agree that any and all controversies, claims, or disputes that I may have with the company* (including any company employee, officer, director, trustee, or benefit plan of the company, in their capacity as such or otherwise), arising out of, relating to, or resulting from my employment or relationship with the company or the termination of my employment or relationship with the company, including any breach of this agreement, *shall be subject to binding arbitration* pursuant to the Federal Arbitration Act (9 U.S.C. Sec. 1 et seq.) (the 'FAA')."  (Italics added.)

The fifth sentence states:  "To the fullest extent permitted by law, I agree to arbitrate any and all common law and/or statutory claims under local, state, or federal law, including, but not limited to, claims under [numerous specified civil rights and labor-related statutes]."  (Boldface omitted.)

The seventh sentence states:  "With respect to all such claims and disputes that I agree to arbitrate, I hereby expressly agree to waive, and do waive, any right to trial by jury."  (Boldface omitted.)

The eighth sentence states: "*I further understand that this agreement to arbitrate also applies to any disputes that the company may have with me.*" (Boldface omitted & italics added.)

Section 11 of the employment agreement also contains subsections governing the administration of the arbitration, provisional remedies, administrative relief, and the voluntary nature of the agreement. The subsection on provisional remedies, which allows both parties to pursue certain provisional remedies, states: "Except for such provisional relief, I agree that any relief otherwise available to the company or me under applicable law shall be pursued solely and exclusively in arbitration pursuant to the terms of this agreement."

We will describe other relevant provisions in our discussion of the contentions on appeal.

## 2. The Legal Principles

"Federal and California law treat valid arbitration agreements like any other contract and favor their enforcement." (*Ramirez, supra,* 16 Cal.5th at p. 492.) Contract defenses such as unconscionability may be applied, but "the doctrine's application to arbitration agreements must rely on the same principles that govern all contracts." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125 (*Kho*).) "The degree of unfairness required for unconscionability must be as rigorous and demanding for arbitration clauses as for any other contract clause." (*Ibid.*)

"The 'general principles of unconscionability are well established. A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party.' [Citations.] Unconscionability has both a procedural and a substantive element. [Citation.] The party resisting enforcement of an arbitration agreement has the burden

4

to establish unconscionability." (*Ramirez, supra,* 16 Cal.5th at p. 492.)

The procedural element " 'addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power.' [Citation.] This element is generally established by showing the agreement is a contract of adhesion." (*Ramirez, supra,* 16 Cal.5th at p. 492.) "Adhesion contracts are subject to scrutiny" due to unequal bargaining power, " 'relegat[ing] to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Ibid.*) Adhesion contracts "remain valid and enforceable unless the resisting party can also show that one or more of the contract's terms is substantively unconscionable or otherwise invalid." (*Id.* at pp. 492-493; see also *Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1245 (*Baltazar*) [where there is no surprise, duress or sharp practice, "we do not subject the [employment] contract to the same degree of scrutiny as '[c]ontracts of adhesion that involve surprise or other sharp practices' "].)

Substantive unconscionability pertains to the fairness of an agreement's actual terms and focuses on whether the agreement will create unfair or one-sided results. (*Ramirez, supra,* 16 Cal.5th at p. 493.) "Substantively unconscionable contractual clauses 'reallocate risks in an objectively unreasonable or unexpected manner.' " (*Ibid.*)

"Both procedural and substantive elements must be present to conclude a term is unconscionable, but these required elements need not be present to the same degree. [Citation.] Courts apply a sliding scale analysis under which 'the more substantively oppressive [a] term, the less evidence of procedural unconscionability is required to come to the conclusion that the

5

term is unenforceable, and vice versa.' [Citation.] '[W]hether a contract is fair or works unconscionable hardship is determined with reference to the time when the contract was made and cannot be resolved by hindsight by considering circumstances of which the contracting parties were unaware.' " (*Ramirez, supra,* 16 Cal.5th at p. 493.)

" 'The ultimate issue in every case is whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement.' " (*Kho, supra,* 8 Cal.5th at p. 126.)

Under the Civil Code, if a court finds a contract or any clause of the contract "to have been unconscionable at the time it was made," the court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (§ 1670.5, subd. (a).) In determining whether to void the entire contract or merely sever objectionable terms, the "overarching" question is whether severance furthers the interests of justice. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 124 (*Armendariz*).)

**3.    The Facts and Proceedings**

Plaintiff was hired in 2018 by a Sensei entity. According to plaintiff, the company's name was changed to the current name "[a]t some point." According to defendant, plaintiff was transferred from a different Sensei entity in July 2020, and "he and other transferring employees went through the new hire onboarding process at Sensei."

Plaintiff was required to sign several employment-related documents in July 2020, and "did not feel as though I could refuse to sign or negotiate any of these documents if I wanted to

6

keep my job." The documents included an offer of employment dated July 20, 2020. The offer required plaintiff to sign and comply with the employment agreement, and stated that the offer of employment "will terminate if it is not accepted, signed and returned by July 22, 2020." Plaintiff accepted the offer and signed the employment agreement on July 20, 2020.

Plaintiff was also required to sign an "Invention Assignment Agreement." That agreement contained a provision on remedies, in which plaintiff agreed that violation of the invention assignment agreement could cause irreparable harm, and the company would be entitled to seek extraordinary relief in court, including preliminary and permanent injunctions, without the need to post a bond (or where a bond was required, that a $1,000 bond would be adequate).

Defendant terminated plaintiff's employment on or about November 3, 2022.

On August 18, 2023, plaintiff filed a complaint alleging six causes of action under FEHA, including disability discrimination based on mental disabilities, retaliation, and related claims.

Defendant responded with a motion to compel arbitration based on the arbitration provisions we have described. Plaintiff opposed the motion, arguing the agreement was unconscionable because it was "not mutual," required plaintiff to arbitrate in San Francisco County, did not provide sufficient discovery, and required arbitration of illegal terms.

4.    **The Trial Court's Ruling**

The trial court denied defendant's motion to compel arbitration.

The trial court found that an arbitration agreement existed, and that it was "a classic take-it-or-leave-it contract of adhesion," and therefore procedurally unconscionable.

7

The court found the arbitration agreement was substantively unconscionable, principally because it was not mutual. Specifically, the court concluded: "There is no mutuality, where only Plaintiff but not Defendant is bound by the arbitration agreement. [¶] On the sole basis of this complete lack of mutuality, the Court can find that this Arbitration Agreement is substantively unconscionable."

The court reached the conclusion that defendant was not bound by the agreement based on: (1) provisions stating, "I agree," "I further agree," "I also agree," and "I further understand"; and (2) the court's own observation (not plaintiff's) that the arbitration agreement "is not signed by the company."

The court reasoned this way. The court referred to the provision that states: "I further understand that this agreement to arbitrate also applies to any dispute that the company may have with me." The court stated that "[t]his is simply a statement of Plaintiff's understanding; it is not a commitment by the company to arbitrate." Similarly, the court stated that "[e]ven the first sentence of the agreement is illusory in its mutuality. The agreement states that the company 'promise[s] to arbitrate all employment-related disputes' with Plaintiff. But the agreement is not signed by the company. [Citation.] Further, even if it were found that the company had agreed to arbitrate all employment-related disputes, the company has nowhere agreed to the details of such arbitration: e.g., that the arbitration be administered by JAMS or that it take place in San Francisco."

The trial court acknowledged precedent that a company need not sign an arbitration agreement for it to be enforceable, but concluded that "taking that route would add another layer of unconscionability. It would allow Defendant to enforce the arbitration agreement if it wished, but at the same time would

8

allow Defendant to sue Plaintiff in Court if it so desired. That is simply not fair."

The trial court then found that two other provisions of the agreement were also unconscionable. The first was a provision incorporating the JAMS rules on discovery.

The agreement provided: "I agree that any arbitration will be administered by JAMS pursuant to its Employment Arbitration Rules & Procedures (the 'JAMS rules')," and provided a link to the JAMS rules.[1] The JAMS rules state in part that "[e]ach Party may take at least one deposition of an opposing Party or an individual under the control of the opposing Party. The Parties shall attempt to agree on the number, time, location, and duration of the deposition(s). Absent agreement, the Arbitrator shall determine these issues, including whether to grant a request for additional depositions, based upon the reasonable need for the requested information, the availability of other discovery and the burdensomeness of the request on the opposing Parties and the witness." (JAMS rules, rule 17(b).)

The trial court concluded the rule "limit[ing] each side to one deposition, unless the arbitrator decides, in their own discretion, to allow more," was unconscionable. The court acknowledged the existence of contrary authority, but cited cases that "have noted that such a provision can add to the substantive unconscionability of an arbitration agreement."

Turning to the venue provision, the court stated: "Further, the requirement that arbitration occur in San Francisco

---

[1] The agreement continued: "If the JAMS rules cannot be enforced as to the arbitration, then the parties agree that they will arbitrate this dispute utilizing JAMS Comprehensive Arbitration Rules and Procedures or such rules as the arbitrator may deem most appropriate for the dispute."

9

County—although Plaintiff worked for Defendant in Los Angeles County—further adds to the substantive unconscionability of the Arbitration Agreement."

Finally, the court found that substantive unconscionability "permeates the document," and that severing multiple clauses "would encourage the drafters of arbitration agreements to include as many unconscionable clauses . . . as possible, knowing courts might catch some but not all of them."

Defendant filed a timely appeal from the trial court's order.

## DISCUSSION

"Where, as here, no disputed factual issue bears upon our unconscionability analysis, we review unconscionability de novo." (*Cook v. University of Southern California* (2024) 102 Cal.App.5th 312, 321 (*Cook*).)

### 1. Procedural Unconscionability

The trial court found the agreement was a "classic" contract of adhesion because plaintiff did not have "a meaningful choice or opportunity to negotiate the document," and accordingly the agreement was procedurally unconscionable. The court did not mention any other factors contributing to the procedural unconscionability of the agreement, and we see none.

Plaintiff insists the agreement "has a high degree of procedural unconscionability" and claims there was "conflicting evidence" on this issue; he asserts that, based on the doctrine of implied findings, we should presume the trial court determined there was a high degree of procedural unconscionability. Plaintiff is mistaken. We presume a trial court made all necessary factual findings supported by substantial evidence. But where there is no conflicting evidence, the issue is one of law, not fact.

Plaintiff does not cite any "conflicting evidence." He cites only conflicting arguments about evidence that is not disputed.

10

Thus plaintiff cites, as purported evidence of a high degree of procedural unconscionability, that he had been employed by defendant for over a year, and was given only two days' time to decide whether to accept the terms of the agreement or be terminated; the agreement itself was evidence of high procedural unconscionability; a separately signed invention assignment agreement was a "material alteration" to the arbitration provision; and the arbitration provision used confusing terms and "legalese." None of these arguments has merit.

Plaintiff's assertions are all based on documents in the record, the terms of which are not disputed, and are subject to our independent review. We are not persuaded plaintiff has demonstrated any enhanced procedural unconscionability.

For example, plaintiff's claim of only "two days' notice" to make an important decision is confirmed by the documents, but does not add to the procedural unconscionability that accompanies any contract of adhesion; notably, plaintiff accepted the terms on July 20, 2020, the same day the agreement was offered. Then plaintiff complains the arbitration provision was three pages long in a 13-page employment agreement that included other rights and obligations, and defendant did not call out the importance of the arbitration provision by requiring him to initial it. Plaintiff fails to mention that "Arbitration Agreement" is in the title of the document and that the entire clause was capitalized and parts were also in boldface.

Similarly, plaintiff cites his lack of legal training or an attorney, and claims it would have been "nearly impossible" to understand the contract's meaning and what rules would apply. We decline to conclude that a person employed as a senior software engineer by a global farm technology company would be

11

unable to understand the meaning of this arbitration agreement. In another illogical assertion, plaintiff states that while he had to agree to binding arbitration, Sensei did not make it clear "that Sensei's claims would also be subject to 'binding' (as opposed to nonbinding) arbitration."

We need not go on. We find no evidence of surprise, duress or sharp practices here; procedural unconscionability is low.

## 2. Substantive Unconscionability

"Because the degree of procedural unconscionability is minimal, the agreement is unenforceable only if the degree of substantive unconscionability is high." (*Dotson v. Amgen, Inc.* (2010) 181 Cal.App.4th 975, 982.)

Here, substantive unconscionability is de minimis, at most.

### a. The mutuality issue

Plaintiff makes four claims about the purported lack of mutuality of the agreement. None of them establishes any significant lack of mutuality.

To begin, we find no merit whatever in the bases used by the trial court to find "a complete lack of mutuality." We have recounted the court's reasoning at pages 8 through 9, *ante,* and will not repeat it here. Suffice it to say that an employer need not sign an arbitration agreement in order to be bound by it. (*Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 ["the writing memorializing an arbitration agreement need not be signed by both parties in order to be upheld as a binding arbitration agreement"; see *id.* at p. 177 ["Just as with any written agreement signed by one party, an arbitration agreement can be specifically enforced against the signing party regardless of whether the party seeking enforcement has also signed, provided that the party seeking enforcement has

12

performed or offered to do so."].)  Here, defendant authored the agreement, printed it on its letterhead, and "evince[d] an intent to be bound" when it filed the motion to compel arbitration.  (Cf. *Serafin*, at pp. 176-177.)

The agreement states plaintiff's understanding that "this agreement to arbitrate also applies to any disputes that the company may have with me."  To suggest that this language does not bind the company, but merely states plaintiff's understanding, is an excessively pedantic reading of the agreement to which we cannot and do not subscribe.  Likewise, the use of "I agree" rather than "we agree" does not mean that it is only plaintiff who has consented to the terms of the agreement.  Any such interpretation is unreasonable.

The trial court identified no other basis for concluding the agreement lacked mutuality.  Plaintiff, however, did make other arguments, and elaborates on appeal on other purported reasons to find the agreement lacks the necessary degree of bilaterality.

First, the arbitration agreement includes what plaintiff refers to as an "affiliated parties" clause; it requires plaintiff to arbitrate any disputes he may have with the company, "including any company employee, officer, director, trustee, or benefit plan of the company, in their capacity as such or otherwise," arising out of plaintiff's "employment or relationship with the company." Plaintiff points out that he must arbitrate his claims against any of defendant's employees, officers or directors, but they are not "equally" bound to arbitrate their claims against him.  This claim relies on a misconstruction of the scope of the agreement.

Thus, plaintiff argues that the phrase, "my employment or relationship with the company," encompasses more than his employment relationship with the company.  He posits an

13

elaborate scenario in which he claims that if he, as a stockholder,[2] were to sue a board member individually for breach of fiduciary duty or for defamation occurring after his employment, he would be required to arbitrate, but "if in response that same individual wanted to sue [plaintiff] for malicious prosecution, then [he or] she could sue [plaintiff] in court."

Both the scenario and plaintiff's conclusions about it are entirely speculative, and assume that his "relationship" with the company encompasses something other than his employment relationship. We find the agreement clear on the point that it covers only disputes relating to plaintiff's employment.

Plaintiff relies on *Cook, supra,* 102 Cal.App.5th 312. That case found unconscionable a clause that required the employee plaintiff to arbitrate "any and all claims" she might have against the defendant university " 'or any of its related entities, including but not limited to faculty practice plans, or its or their officers, trustees, administrators, employees or agents, in their capacity as such or otherwise.' " (*Id.* at p. 326.) The agreement did not require the related entities to arbitrate their claims against the plaintiff. (*Ibid.*) The court said: "No explanation is offered as to why [the plaintiff] should be required to give up the ability to ever bring claims in court against a USC employee that are unrelated to USC or her employment there." (*Id.* at p. 327.)

The agreement in *Cook* was demonstrably different from the agreement here. In *Cook*, "[t]he plain language of the

_____

[2]     Plaintiff's declaration states that "I believe I own a limited amount of stock in Sensei, approximately 100 shares. I purchased these shares when I exercised stock options following the termination of my employment with Sensei."

agreement require[d] [the plaintiff] to arbitrate claims that [were] unrelated to her employment with [the defendant]." (*Cook, supra,* 102 Cal.App.5th at p. 321.) Moreover, the agreement in *Cook* had an "infinite" duration (*id.* at p. 316); it survived termination of the plaintiff's employment and could only be revoked in a writing signed by the plaintiff and the president of the defendant (*id.* at p. 318). There is nothing similar in the agreement here.

In short, while it is theoretically "one-sided" to require plaintiff to arbitrate his employment-related claims against defendant's employees, officers, directors and the like, while not specifically requiring them (as they are not signatories) to arbitrate disputes relating to plaintiff's employment, the practical effect appears to be nonexistent.

Second, in another version of the same argument, plaintiff argues at length that there are "different scopes of arbitration": that he is required to submit "any claim related to his 'employment or *relationship with the* company,' " while Sensei "merely agrees to submit 'all employment related disputes,' " and "[t]his nuance makes a difference." We see no "nuance." As we have already stated, the only reasonable reading of the agreement is that disputes "arising out of, relating to, or resulting from my employment or relationship with the company" are no different from "all employment-related disputes." To suggest otherwise is a constricted reading of phrases whose meaning is apparent from any perusal of the entire provision on arbitration.

Third, plaintiff complains about "a term that extends the duration of the agreement indefinitely beyond the employment relationship." He cites the "assignability" and "survivorship"

15

provisions in the "miscellaneous" section of the employment agreement. The assignability provision states the agreement "will be binding upon my heirs, executors, assigns, administrators, and other legal representatives, and will be for the benefit of the Company, its successors, and its assigns." It also states that Sensei may assign the employment agreement to any successor to substantially all of its assets, and that successors and assigns are authorized to enforce Sensei's rights under the employment agreement. The survivorship provision states that the "rights and obligations of the parties to this Agreement will survive termination of my employment with the Company."

Plaintiff says the assignability provision—which applies to the entire employment agreement and is not specific to the arbitration provisions—is unconscionable because the obligation "is forever" and allows Sensei "to freely assign rights held against" plaintiff and his successors. We find this claim puzzling and difficult to parse. These are standard provisions with a straightforward meaning, and we find no unconscionability based on plaintiff's asserted "lack of mutuality," "infinite duration," or otherwise.

Fourth, plaintiff claims there is a "nonmutual carveout of arbitrable remedies." This claim is also difficult to understand. The arbitration agreement states that "the company and I shall be entitled to pursue any provisional remedy permitted by the California Arbitration Act (California Code Civ. Proc. § 1281.8), or otherwise provided by this agreement." Plaintiff complains that "such claims would primarily be brought by Sensei." That does not make the clause unconscionable. (See *Baltazar, supra,* 62 Cal.4th at p. 1248 ["regardless of whether [the defendant] is,

16

practically speaking, more likely to seek provisional remedies than its employees, simply reciting the parties' rights under section 1281.8 does not place [the plaintiff] at an unfair disadvantage"].)

Finally, plaintiff points to a separate, contemporaneously signed "Invention Assignment Agreement" which he attached to his declaration in opposition to defendant's motion to compel arbitration. That agreement has a remedies provision in which plaintiff acknowledged that a violation by plaintiff "may cause the Company irreparable harm" and agrees defendant "will be entitled to seek extraordinary relief in court, including, but not limited to, temporary restraining orders, preliminary injunctions and permanent injunctions without the necessity of posting a bond or other security (or, where such a bond or security is required, I agree that a $1,000 bond will be adequate)." Plaintiff contends this separate agreement "materially supplemented" the arbitration terms of the employment agreement, and "did not provide [plaintiff] with the same rights it reserved for itself, including the right to seek permanent injunctions in court."

The trial court made no findings about the separate invention assignment agreement, and we are inclined to think it is irrelevant. This case is not about inventions; it is about plaintiff's employment contract, under which both parties have the right to seek provisional remedies. However, there is authority holding that separate agreements concerning a single primary transaction (the plaintiff's employment, and how to resolve disputes arising from his employment) must be read together. (*Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482, 490-491; *id.* at p. 491 ["[S]ince the two agreements were part of a single transaction[,] unconscionability in the Confidentiality

17

Agreement is relevant in determining whether the parties' agreement to arbitrate was unconscionable."].) *Alberto* further cited authority to the effect that " 'injunctive relief provisions that waive a bond and waive the requirement that a party show irreparable harm are substantively unconscionable.' " (*Id.* at p. 492.) Consequently, we will assume that the remedies clause of the invention assignment agreement is substantively unconscionable. Given its limited potential scope, the unconscionability is minimal.[3]

In sum, substantive unconscionability in the provisions plaintiff has challenged for lack of mutuality is, at most, low.

**b.  The discovery issue**

In *Armendariz,* the court held that FEHA claims could be compelled to arbitration only if the agreement satisfied five minimum requirements, one of which was that it " 'provides for more than minimal discovery.' " (*Armendariz, supra,* 24 Cal.4th at p. 102; *id.* at p. 106 ["they are at least entitled to discovery sufficient to adequately arbitrate their statutory claim, including access to essential documents and witnesses, as determined by the arbitrator(s)"].)

*Ramirez* provides further direction concerning limits on discovery, disapproving cases that "looked to specific circumstances that only arose after the contract was executed."

---

[3]  In a separate two-paragraph argument at the end of his respondent's brief, plaintiff complains that the invention assignment agreement contains a provision that illegally precludes him from " 'tak[ing] away' employees" following the termination of his relationship with defendant, and that his employment agreement contains an illegal confidentiality term. Plaintiff has not developed these arguments and we accordingly do not consider them.

18

(*Ramirez, supra,* 16 Cal.5th at p. 505; see *id.* at p. 506.) Instead, "[t]he assessment of whether a discovery clause is unconscionable should focus on general factors that can be examined without relying on subsequent developments. Those factors include the types of claims covered by the agreement, the amount of discovery allowed, the degree to which that amount may differ from the amount available in conventional litigation, any asymmetries between the parties with regard to discovery, and the arbitrator's authority to order additional discovery." (*Id.* at p. 506.) *Ramirez* continues: "Allowing the arbitrator to deviate from agreed-upon default discovery limits ensures that neither party will be unfairly hampered in pursuing a statutory claim based on circumstances that arise postformation. We note that giving the arbitrator authority to expand discovery based on *Armendariz*'s requirement is one way the adequacy concern can be addressed." (*Ibid.*) "Normally, we assume the arbitrator will act reasonably and in conformity with the law." (*Ibid.*)

In *Ramirez*, the court stated that even if the discovery clause were ambiguous as to whether the arbitrator could order additional discovery, "a court should select the interpretation that makes the contract valid." (*Ramirez, supra,* 16 Cal.5th at p. 507.) Assuming the clause was susceptible to either interpretation, "we would conclude the arbitrator has authority to order additional discovery if the arbitrator determines that action is necessary to allow fair arbitration of the claim. Such an interpretation of the provisions eliminates any unconscionability." (*Ibid.*)

We earlier described the JAMS provision on discovery. (See *ante,* at p. 9.) Briefly, the JAMS rules allow "at least one deposition of an opposing Party" and require the parties to try to agree "on the number, time, location, and duration of the

19

deposition(s)." (Rule 17(b).) If they do not agree, the arbitrator "shall determine these issues" based on "the reasonable need for the requested information," among other factors. (*Ibid.*)

Plaintiff acknowledges the principles enunciated in *Ramirez,* but nonetheless continues to argue, without citation to any relevant authority, that the trial court's determination "is still valid, notwithstanding *Ramirez.*" It is not. The discovery rules applicable here plainly meet the standards described in *Armendariz* and *Ramirez.* (See also *Vo v. Technology Credit Union* (2025) 108 Cal.App.5th 632, 648 [finding no substantive unconscionability because JAMS rules, rule 17(b)—the same rule at issue here—"provide[s] an arbitrator the authority to permit nonparty discovery to allow fair arbitration of [the plaintiff's] statutory claims"].)

Finally, plaintiff complains that defendant did not provide the trial court with the JAMS rules, and the trial court did not explain whether it relied on the rules in effect when the parties signed the agreement in 2020 or the rules in effect now. It does not matter.

We grant defendant's two requests for judicial notice, first of the JAMS rules effective June 1, 2021, and second of the JAMS rules effective July 1, 2014. These show the discovery rule at issue was the same, then and now.

c.    **The venue issue**

The trial court, without analysis, found the requirement that arbitration occur in San Francisco County, while plaintiff worked for Sensei in Los Angeles County, "further adds to the substantive unconscionability of the Arbitration Agreement." The court cited no authority for its conclusion, and there is authority to the contrary. *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, 1067 explains: "[T]he burden of proof is on

20

the party resisting the forum to demonstrate the selected forum 'would be unavailable or unable to accomplish substantial justice or that no rational basis exists for the choice of forum. [Citations.]  Neither inconvenience nor the additional expense of litigating in the selected forum is a factor to be considered.' " *Ramos* cites *Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1305 for the proposition that "*Armendariz* does not preclude forum selection clauses so long as employee has adequate remedy for discrimination claims in selected forum." (*Ramos,* at p. 1067; see *ibid.* ["Here, [the plaintiff's] only complaint is that arbitration in Chicago would be inconvenient and expensive for her and more convenient for [the defendant]."].) The court concluded the provision was not substantively unconscionable.  (*Ibid.*)

We see no reason to wade into the parties' debate over this point, which we consider moot in light of plaintiff's admission that defendant has offered to hold the arbitration in Los Angeles.

**3.    Severance**

In *Ramirez,* the court explained the analysis to be applied in determining whether to sever unconscionable provisions in an arbitration agreement.  "Here, we clarify that no bright-line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term.  Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term.  Instead, the appropriate inquiry is qualitative and accounts for each factor *Armendariz* identified." (*Ramirez, supra,* 16 Cal.5th at p. 516.)  After discussion of those factors, *Ramirez* summarized:  "Accordingly, courts may liberally sever any unconscionable portion of a contract and enforce the rest when:  the illegality is collateral to

21

the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." (*Id.* at p. 517.)

Each of those factors applies in this case. The only arguably unconscionable provisions are the venue provision that defendant has offered not to enforce, and the remedies provision of the separate invention assignment agreement, both of them producing at most a low level of unconscionability. Both of them are collateral to the contract's main purpose; this is *not* an agreement where " 'the central purpose of the contract is tainted with illegality.' " (*Ramirez, supra,* 16 Cal.5th at p. 516.) Here, "the contract's unconscionability *can* be cured purely through severance or restriction of its terms," and no augmentation is necessary. (*Ibid.*) Where that is so, "then severance or restriction is the preferred course for provisions that are collateral to the agreement's main purpose." (*Ibid.*) This is not a case where "mere severance of the unconscionable terms would function to condone an illegal scheme" (*ibid.*), and the provisions to be severed do not in any way "indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage" (*id.* at pp. 516-517).

In short, this is not a case where a court could properly withhold enforcement of the arbitration agreement.

## DISPOSITION

The order denying defendant's motion to compel arbitration is reversed and the cause is remanded with directions to the trial court to vacate its order and enter a new order severing or restricting the two provisions that are arguably unconscionable

22

and granting defendant's motion to compel arbitration. Defendant to recover costs on appeal.


GRIMES, J.

WE CONCUR:


STRATTON, P. J.


WILEY, J.